The order setting aside the execution in this case is reversed, and the plaintiffs in error have leave to proceed on their judgment, and the record is remitted.

# Leonard's Ex'ors *versus* Winslow et al.

1. One partner cannot appropriate the funds or securities, or other effects of the partnership, in discharge or payment of his own private debts, claims, or contracts, and a transaction of this kind with a partner, with a knowledge of the circumstances, will be deemed *mala fide*, and be treated as a nullity.

2. To constitute a perfect sale of a chattel, the subject-matter of the contract must be defined; but weighing, measuring, or setting apart, is not essential to a sale, except when necessary to define the subject-matter of the contract.

3. Any kind of an article in bulk may be sold so as to pass the title.

4. Delivery is not necessary to pass the title of an absent article; but specification is an indispensable requisite.

5. If the article contracted for is not manufactured or in existence at the date of the contract, or if manufactured, it is not selected from a lot of similar articles, the subject-matter of the contract is undefined; and in such case no title passes, until either the article is manufactured, set apart, appropriated, accepted, or delivered.

6. The vesting of title is always a question of the intention of the parties, to be derived from the contract and its circumstances; and if the contract had reference to a specific lot of metal, the title passed to the plaintiffs on the delivery of the bill of sale.

7. A carrier cannot hold goods by virtue of a lien for back freights.　Per WILLIAMS, J., District Court, adopted by the Supreme Court.

ERROR to the District Court of *Allegheny county.*

Replevin for 400 tons ~~tons~~ pig metal, which plaintiffs below allege that they purchased from D. B. Long & Co. (Long, Church & Carothers,) in payment of a debt of Jesse Carothers,

[Leonard's Ex'ors *v.* Winslow et al.]

and that they are entitled to the iron now in dispute, under and by virtue of that contract. The following is a copy of the agreement under which plaintiffs claim, viz:

"Pittsburgh, May 22, 1851.

"We have this day sold to Winslow, Lanier & Co., 400 tons pig metal, now at our landing at Washington Furnace, or that will soon be delivered there, (Clarion county.) And we do hereby direct Mr. McClure to give them possession thereof, or such agent as they may send therefor. And we also wish Mr. McClure to render all the aid he can towards the shipping thereof.

"D. B. Long & Co.

"The above pig metal will be delivered to Adam Holliday, our agent.

"Winslow, Lanier & Co.

"May 24, 1851."

The facts of the case are fully stated in the opinion of the court below, by Williams, J., of which we give so much as is necessary to a full understanding of the case.

"This is an action of *replevin* for 82 tons of pig metal. The plaintiffs claim title under a sale to them on the 22d day of May, 1851, by D. B. Long & Co., of 400 tons of pig metal, (of which the iron in dispute is alleged to be part,) at $25 per ton.

The firm of D. B. Long & Co., was composed of D. B. Long, Samuel Church, and Jesse Carothers.

Carothers, it is alleged, was largely indebted to the plaintiffs, (some $71,000,) and this pig iron was sold, with the assent of all the members of the firm of D. B. Long & Co., to pay, in part, the indebtedness of Carothers to the plaintiffs.

D. B. Long & Co., it is alleged, were indebted to Church & Carothers, (composed of Samuel Church and Jesse Carothers,) at the time of the sale, and the price of the metal sold to the plaintiffs was to be credited to D. B. Long & Co. on their indebtedness to Church & Carothers. So that, although the metal was sold to pay the individual indebtedness of Carothers to the plaintiffs, yet, at the same time, it went to discharge the indebtedness of D. B. Long & Co. to Church & Carothers. This last named firm (C. & C.) was indebted to Carothers at the date of the sale of the metal in controversy.

The defendants do not claim that their testator, Samuel Leonard, was the owner of the metal in dispute, but they allege that it is the property of John Brenneman and others, creditors of D. B. Long & Co. Brenneman claims the metal under a sale or transfer made, (pursuant to instructions from D. B. Long,)

by William McClure, the manager of the firm of D. B. Long & Co., on the 26th of May, 1851, at $25 per ton, to pay a debt due by D. B. Long & Co. to himself, (Brenneman,) of $1000; also, to pay a debt due by D. B. Long & Co. to Long & Miller, of $1400; also, to pay a debt due by D. B. Long & Co. to Thomas Bolton, of $600.

Brenneman claims to hold a part of the metal, to wit, 40 tons in his own right, and the residue, 42 tons, in trust for Long & Miller, (D. B. Long and Alexander Miller, owners of Beaver Furnace,) and Thomas Bolton, creditors of D. B. Long & Co.

The first question which arises in this case is, was there a sale of the pig metal to the plaintiffs, as alleged, on the 22d day of May, 1851? Was the sale made with the knowledge and assent of all the members of the firm of D. B. Long & Co.?

The defendants allege that the sale was made without the knowledge and assent of D. B. Long, one of the members of the firm of D. B. Long & Co., to pay a private debt of Jesse Carothers, one of the members of said firm.

' The law is well settled, that one partner cannot appropriate the funds or securities, or other effects of the partnership, in discharge or payment of his own private debts, claims, or contracts. In such cases, the creditor dealing with the partner, and knowing the circumstances, will be deemed to act *mala fide*, and in fraud of the partnership, and the transaction by which the funds, securities, and other effects of the partnership have been so obtained, will be treated as a nullity.' Story, Partn. p. 197, § 132.

Let us apply this rule to the facts of this case. Was the sale to the plaintiffs made with the knowledge and assent of D. B. Long and the other partners? This is a question of fact for the jury to determine.

If the sale was made with the knowledge and previous assent of all the partners, or was subsequently ratified by them, it is binding on the partnership; but if it was made without the concurrence and assent of D. B. Long, and was not subsequently ratified by him, and if the plaintiffs were aware of the fact that D. B. Long was a member of the firm of D. B. Long & Co., and the firm's name was sufficient to put them upon inquiry respecting the fact, it vested no title in the plaintiffs, and your verdict should be for the defendants.

If the jury find that the sale was made with the assent of all the members of the firm, there is no evidence that it was made for the purpose of hindering, delaying, or defrauding the creditors of the firm of D. B. Long & Co. The only question to be determined by the jury in reference to the sale is, whether or not it was made with the assent of all the partners, or whether

it was subsequently ratified by them. The sale, if assented to or ratified by all the partners, is binding on the partnership; but if not assented to or ratified by all the partners, it must be treated as a nullity.

2. If the sale of the four hundred tons of pig metal, mentioned in the bill of sale, was made with the assent of all the members of the firm of D. B. Long & Co., or if the sale was made by one or more of the partners, and was subsequently ratified, by all, the next inquiry is, What rights did the plaintiffs acquire by virtue of the sale? Did the title to any specific pig metal, as between the vendors (D. B. Long & Co.) and the plaintiffs, (Winslow, Lanier & Co.,) pass to the latter, upon the delivery of the bill or certificate of sale?

The defendants allege that it did not; and they contend, that before the title to the iron could vest in the plaintiffs, under the contract of sale, it was necessary that it should be weighed or designated, separated and set apart, and that possession thereof should be actually delivered to the plaintiffs, or their agent, by M'Clure, the agent and manager of the firm of D. B. Long & Co. If the law be as contended by defendants' counsel, no title passed to the plaintiffs upon the contract, and the delivery of the bill or certificate of sale. I do not, however, understand the Supreme Court as *broadly* affirming, in the opinion delivered in this case, the principle for which the defendants contend. In delivering the opinion referred.to, Lowrie, J., says: 'It is perfectly legitimate to point to the want of measuring and setting apart as evidence, in the very nature of the transaction, that it was not intended as a perfect sale; but this is not essential to such a sale, and therefore not conclusive one way or the other, except when it is necessary to define the subject-matter.        *        *        *        *

'That the bargain is by words, in the past or present tense, is not conclusive evidence of a perfect sale; for if it appear in the contract, or *ab extra*, that the vendor did not then own the article contracted for, or that it was not yet in existence, or not yet manufactured, or not selected out of a lot of similar articles, then the subject-matter of the contract remains undefined and unspecified—at least to some degree—and it is incompatible with the very nature of things, to call it a finished, or perfect sale. There can be no doubt, that a man may sell any kind of article in bulk, so as to pass the title. He may pass the title to an absent thing, without delivery, for, as between vendor and vendee, specification, and not delivery, is necessary to the vesting of the title. This is, and always has been the law, except in cases where other forms have been prescribed by statute.

'The vesting of the title is always a question of the intention of the parties, to be derived from the contract and its circum-

[Leonard's Ex'ors v. Winslow et al.]

stances; and actual delivery, weighing and setting aside the goods, are only circumstances from which the intention may be inferred as a matter of fact. And this is the principle of numerous cases, where the title has been held to vest, even where there has been no measurement.'

The principles laid down for our guidance, in the opinion delivered in this case, may be summed up as follows, viz :—

To constitute a perfect sale, the subject-matter of the contract must be defined. But weighing, measuring, or setting apart, is not essential to a sale, except when necessary to define the subject-matter of the contract.

Any kind of an article in bulk may be sold, so as to pass the title.

Delivery is not essential, to pass the title of an absent article; but specification is an indispensable requisite.

If the article contracted for, is not manufactured or in existence, at the date of the contract—or, if manufactured, it is not selected from a lot of similar articles, the subject-matter of the contract is undefined—and in such case no title passes until the article is either manufactured, set apart or appropriated, accepted or delivered.

The vesting of the title is always a question of the intention of the parties, to be derived from the contract and its circumstances.

Let us apply these principles to the evidence in this case, and ascertain whether the title to any specific metal, passed to the plaintiffs, upon the delivery of the bill or certificate of sale.

Was the metal contracted to be sold, manufactured at the date of the contract of sale? And, if manufactured, did the parties contract in reference to a specific lot? Did they intend to embrace in their contract all the pig metal at that time manufactured at Washington Furnace, which the vendors had either at the furnace or at their landing, or on the way from the furnace to the landing; or were the 400 tons, mentioned in the bill of sale, part of a larger lot which the vendors then had on hand, or which was to be thereafter manufactured? If the metal sold to the plaintiffs, was part of a larger lot, owned by D. B. Long & Co. at the date of the contract, and the same was not in any other way separated from their other metal, so as to be distinguishable from it—or if the same was not manufactured—no title passed to the plaintiffs upon the delivery of the bill of sale. But if it was a sale of all the metal owned by the vendors, and was so understood and intended by the parties, then the title passed and vested in the plaintiffs, upon the delivery of the bill, or certificate of sale. 'There was a defined lot of metal in the intention of the parties,' if it was a sale of

all the metal which the vendors had, either at the furnace or landing, or on the way to the landing.

If there was no other evidence in the cause, except the written contract of the parties, in relation to the subject-matter of the contract, it would be my duty to instruct the jury, that no title passed to the plaintiffs, on the delivery of the bill of sale. But there is other evidence, tending to show what was the intention of the parties to the contract—tending to show that there was a defined lot of metal in their intention when they entered into the contract. In order to ascertain the intention of the parties, we must look, not only to the contract itself, but to all its attendant circumstances; and among these, the facts testified to by Mr. Church, are proper, for the consideration of the jury, in determining the question, whether the parties intended the sale and purchase of a specific lot of pig metal—being all that was manufactured and owned by the vendors, at that time—or whether they intended the sale and purchase, only of a part of a larger lot, which the vendors then had, or which was afterwards to be manufactured by them.

If the contract had reference to a specific and defined lot of metal, the title passed to the plaintiffs, on the delivery of the bill of sale, if such was the intention of the parties. The facts are for the jury.

3. The next matter to be considered, if the jury find that there was a sale of a specific lot of metal, and that the title thereto passed on the delivery of the bill of sale, is: Did the title to the eighty-two tons now in controversy, as between the vendors and the plaintiffs, pass to the latter by the sale of the four hundred tons?

This is a question of fact for the determination of the jury, depending upon the intention of the parties: Was the metal in controversy, part of the four hundred tons sold to the plaintiffs? Was it intended, that the eighty-two tons should pass to the plaintiffs, with the other metal at the landing? Did the parties intend to embrace this metal in the sale of the four hundred tons?

It has been contended, that inasmuch as the metal in controversy was at the mouth of the Clarion river, on its way to Pittsburgh, some forty miles this side of Washington Landing, at the date of the sale to the plaintiffs, that it is not embraced in the terms of the contract of sale, which has reference to metal then at Washington Landing, or soon to be delivered there. But the fact that the metal was at the mouth of the Clarion river, and not at Washington Landing, at the date of the contract of sale, makes no difference, if the parties were not aware of its removal, but supposed it to be still at the landing, and intended

[Leonard's Ex'ors *v.* Winslow et al.]

to embrace it in the sale of the four hundred tons. What, then, was the intention of the parties? Were they aware of the fact, that the two boat loads in question had been already removed from the landing, and were then on their way to Pittsburgh? And did they, in the sale of the four hundred tons, supposed to be at the landing, intend to except these two boat loads?' If the parties, at the time of the sale, were aware of the fact, that the eighty-two tons were then at the mouth of the Clarion, some forty miles this side of Washington Landing, the reasonable inference would be, that the eighty-two tons were not intended to be embraced in the sale to the plaintiffs. But if the fact was not known, and the metal was supposed to be still at the landing, and it was the intention of the parties to embrace the eighty-two tons in controversy, in the sale of the four hundred tons, it seems to me that the title would pass to the plaintiffs, just as it would if it had not been removed from the landing. The intention of the parties is to govern, and if the jury find, from all the evidence in the cause, that it was the intention of the parties to sell a specific and defined lot of metal, of which the eighty-two tons is part, and to vest the title thereto in the vendors, then, as it respects the eighty-two tons in controversy, the title passed to the plaintiffs, upon the delivery of the bill, or certificate of sale.

4. The next inquiry, supposing the title to the pig metal in controversy, as between the vendors and plaintiffs, to have passed to the latter, by the sale and delivery of the bill, or certificate of sale, is, what effect is to be given to the subsequent sale by McClure to Brenneman, or to the arrangement made between them, on the 26th of May, 1851? Which title is to prevail, the plaintiffs' or Brenneman's?

The plaintiffs allege, that they are entitled to recover, because they hold under the first sale, and because there was no actual or sufficient delivery of the metal to Brenneman, under his agreement with McClure, to vest the title in him, as against the plaintiffs. The plaintiffs' allegation is, that Brenneman's possession of the metal, under his contract to freight the same, was as the agent of D. B. Long & Co., and, therefore, his possession was the possession of D. B. Long & Co.; and that upon this sale to the plaintiffs, the possession of Brenneman, who was the agent and freighter of D. B. Long & Co., became the plaintiffs' possession; and that there was nothing in the agreement between McClure and Brenneman to change the character of this possession, and consequently, no title passed to the latter.

The defendants allege, that the metal was transferred to Brenneman in good faith, in payment of a just debt due him by D. B. Long & Co., amounting to $1000; also, in payment of a debt due and owing by D. B. Long & Co., to Long & Miller,

[Leonard's Ex'ors *v.* Winslow et al.]

amounting to about $1400; also, in payment of a debt owed by the same firm, to Thomas Bolton, amounting to $600; and that he is entitled to hold the metal in his own right, and as trustee for the creditors named; that Brenneman being in possession at the time of the arrangement with McClure, no delivery of possession was necessary to vest the title in him; and that Brenneman, having the actual possession of the metal at the time of the transfer, is entitled to hold it, as against the plaintiffs, admitting them to have been *bona fide* purchasers; and the title, as between D. B. Long & Co. and the plaintiffs, to have passed to the latter by the delivery of the bill of sale.

Was the metal transferred in good faith to Brenneman, for a valuable consideration, and without notice of the prior sale to the plaintiffs? Were D. B. Long & Co. indebted to Brenneman, Long & Miller, and Bolton, as alleged? If not, then, as against the plaintiffs, Brenneman is not entitled to the metal; but if D. B. Long & Co. were indebted, as alleged, then there was a good and valid consideration for the transfer, and McClure, the manager, if he was authorized by the firm, or either of the partners, could make a valid sale or transfer of the partnership property, in payment of the partnership debts.

So far as it regards the transfer or sale (whichever it may be called) of the metal to pay the debt of $1000 due to Brenneman, the difficulty (if any) consists in the fact that there was no actual delivery of possession accompanying the transfer. The metal was already in the possession of Brenneman, under his contract to freight the same, and the court instruct the jury that such possession was sufficient to vest the title in him as against the plaintiffs. Where a vendee is in possession no delivery is necessary; and where the same thing is sold to two persons by transfers equally valid, he who first acquires possession becomes entitled to the property. If, therefore, the jury find that the metal was sold or transferred to Brenneman, in payment of a *bonâ fide* debt due by D. B. Long & Co., without notice of the prior sale to the plaintiffs, he is entitled to hold so much of the metal in controversy as is necessary to pay his debt of $1000, at $25 per ton, which will be forty tons, and as to that amount (40 tons) the plaintiffs are not entitled to recover.

But how stands the case in regard to the residue of the metal,—the remaining 42 tons? Is Brenneman entitled to hold that in trust to pay the debts due Long & Miller and Thomas Bolton?

In regard to the debt due Long & Miller, amounting to about $1400, it is clear, that D. B. Long himself could not have made a valid sale or transfer of the metal previously sold with his assent, to the plaintiffs, in payment of a debt due the firm of Long & Miller, of which he was a member. It would be in fraud ·

[Leonard's Ex'ors *v.* Winslow et al.]

of the plaintiffs, and they would have a right to avoid such a sale or transfer. Neither could D. B. Long authorize M'Clure or any other agent to make a valid sale or transfer for such a purpose.

And then, in regard to the transfer or sale to pay the debt due Thomas Bolton, can Brenneman hold the metal or any part thereof for that purpose? (The court here referred to the testimony of Mr. M'Clure.)

It does not appear, from any evidence in this cause, that Bolton was a party to the arrangement between M'Clure and Brenneman, testified to by M'Clure, or that he in any way assented to it, or that he was aware of it at the time, or that he has since ratified it. It is not alleged that it was a sale to Brenneman of $600 worth of metal at $25 per ton, he agreeing to pay that amount to Thomas Bolton. The transaction, as I understand the testimony of M'Clure, was this: It was a transfer, or an undertaking to transfer, so much metal to Brenneman, for the purpose of paying the three debts mentioned; and all that Brenneman can be fairly understood as undertaking, on his part, was to apply the metal faithfully to these purposes. Besides, if it was an absolute undertaking, on his part, to take the metal at the price named, and pay these debts himself, he would not be bound by the arrangement; for it is in proof that he was to have forty tons delivered to him in addition to the eighty-two tons in controversy, and there is no pretence that the forty tons were delivered. D. B. Long & Co., not having complied with the agreement, (if it were an absolute sale,) Brenneman would not be bound by it; and the court instruct you that if you find the facts to be as stated by the witness, M'Clure, no title passed to Bolton or to Brenneman, for his use, under the arrangements with M'Clure. Your verdict, as to the 42 tons residue of the iron, after paying the debt due Brenneman, should be in favor of the plaintiffs, if you are satisfied that there was a sale to the plaintiffs of a specific lot of pig metal, with the assent of all the members of the firm of D. B. Long & Co., and that the title passed upon the delivery of the bill of sale, and that it embraced the metal in controversy.

Something has been said respecting Brenneman's agreement to deliver the metal to Larimer for the plaintiffs, his failure to do so, and his claim to hold the metal for back freight. This cannot affect his rights here, unless, by setting up a claim to the metal for back freights, he is now estopped from claiming under the arrangement with M'Clure, and the court instruct you that he is not estopped. But Brenneman cannot hold the metal by virtue of a lien for back freights.

5. In regard to the damages: If plaintiffs are entitled to recover for any portion of the metal, they are entitled to recover

its value in the city of Pittsburgh at the time the writ was issued, less the freight, $3.12½ per ton, and also damages for its detention from the time the writ was issued till the present time. It is not a case for exemplary damages. Interest on the value of the metal is a fair measure of the damages for the detention: The value of the metal at the institution of the suit, less the freight, with interest thereon to the present time, will be a fair measure of damages in this case.

Under the view which the court have taken of the law, the duty of the jury is simple and plain.

1st. Was the sale to the plaintiffs made with the assent of all the members of the firm of D. B. Long & Co., or assented to by them after it was made? Was it a sale of a specific lot of pig metal, and did the parties intend the title to pass upon the delivery of the certificate of sale? If so, as between the vendors and the plaintiffs, the title passed.

2d. Is the metal in controversy part of the metal specified in the bill of sale? Did the parties intend to embrace the 82 tons in their contract, or were they excepted from the sale of the 400 tons? What is the fact? If the parties were not aware of the removal of the metal, and intended to embrace it in the sale, the title would pass to the plaintiffs, under the sale, just as if the metal had remained at the landing, where it was supposed to be at the date of the sale.

3d. Was the transfer to Brenneman, so far as it respects his claim to the 40 tons of metal in his own right, for a *bonâ fide* debt due him by D. B. Long & Co., and without notice of the prior sale to the plaintiffs? If so, he is entitled to hold forty tons of the metal in controversy, and he is not restricted to his *pro rata* proportion of the 82 tons, to be ascertained in the mode indicated by the counsel for the plaintiffs.

4th. Under the evidence, Brenneman is not entitled to hold the residue of the metal in trust for Long & Miller, and Thomas Bolton. As to this amount, the plaintiffs are entitled to recover, if the jury find that, as between the vendors and plaintiffs, the title to this metal passed to the latter upon the delivery of the bill of sale.

5th. Damages: value of metal, less freight, with interest from institution of suit."

The charge of the court was assigned for error.

*Woods*, for plaintiff in error, referred to *Miller* v. *Henderson*, 10 S. & R. 292; *Hurst* v. *Kirkbride*, 1 Y. 139; *Christ* v. *Deffenbach*, 1 S. & R. 464; *Oliver* v. *Oliver*, 4 R. 141; *Bank* v. *Fordyce*, 1 Barr, 457; *Clark* v. *Partridge*, 2 Id. 13; *Partridge* v. *Clark*, 4 Id. 166.; *Renshaw* v. *Gans*, 7 Id. 118.

*Shaler* and *Knox*, for defendants in error, referred to *Leonard* v. *Winslow et al.*, 12 Harris, 17.

The opinion of the court was delivered January 9, 1857, by

LEWIS, C. J.—The plaintiff in error has neglected to furnish us in his paper book, with "the verdict of the jury, and judgment thereon," as required by the first of the rules of court, adopted on the 6th of September, 1852. In the specifications of error, he has omitted to state the parts of the charge excepted to, as required by the seventh of the rules already mentioned. The assignments of error must therefore, according to the requirements of rule 8th, be "held the same as none."

But we perceive no error whatever in the charge, and we adopt it as containing a sound exposition of the law. On the first trial, there was no definition of the subject-matter sold, except the statement in a paper signed by the vendors, in which they stated that they "had sold 400 tons pig metal now at their landing at Washington Furnace, or that will soon be delivered there." This was held to be insufficient of itself to pass title to 82 tons of pig metal, which had been previously shipped from the landing, and was, at the time of the sale, on its way down the river ; but it was there intimated, in the opinion of this court, that other evidence might be given, which would show that these 82 tons were included in the sale. On the last trial, other evidence was accordingly given, tending to prove that the 82 tons were part of the 400 tons sold, and that the parties did not know at the time of the sale, that any of the iron had been shipped, and was on its way down the river. The witness who made the sale, states expressly that the part that was shipped was sold to the plaintiffs, as well as that at the landing, and that all parties supposed that the iron in question was still at the landing. This, and other evidence of like character, fully supplied the defects in the plaintiff's title, which appeared on the first trial. Neither the court below nor the jury, had any doubt or hesitation on the subject. Their decision is in entire conformity to the views of this court, as expressed by Mr. Justice Lowrie, (12 Harris, 17.)

But it is urged, that the parol evidence ought not to have been received, to contradict what is called the written bill of sale. To this it may be answered, that the instrument of writing is evidently not the contract of sale, but a paper prepared afterwards, for the purpose of furnishing directions to the vendors' agents to "give possession," and to "render all the aid they could in shipping the metal." It does not express the terms of sale, was in part made previously, and the terms are fully noted by the witness. In the second place, if the paper had been prepared as, and for a bill of sale, it is clear that all the parties were mis-

[Tate *v.* Tate.]

taken in regard to the place where the 82 tons of pig iron were located, and it was unquestionably proper to correct that mistake.

There is no error in the proceeding below.

Judgment affirmed.