posed upon travellers being seasonably to turn to the right upon meeting. If the defendant was driving a heavily loaded wagon, and the plaintiff was driving a light team, these were circumstances for the jury to consider as modifying their respective duties."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. W. Pettengill*, for the defendant.

*J. L. Eldridge*, for the plaintiff.

BY THE COURT. The whole question of fact was rightly submitted to the jury under instructions sufficiently favorable to the defendant, and which were all that the facts of the case required.

*Exceptions overruled.*

WILFRED P. TAYLOR & another *vs.* DANVILLE COLE & another.

If the maker of a chattel, after it is made, agrees to deliver it at the place of business of the person for whom it was made, he is liable for any injury to it from carelessness in the transportation, although at the time of the contract for making it nothing was said about delivery, and there was no usage as to delivery.

One for whom a kettle had been made, examined it and knew that it leaked somewhat, but ordered it to be delivered, without objection ; it continued to leak but notwithstanding he gave his promissory note for the price, without objection. *Held*, that these facts were not, as matter of law, conclusive evidence of his waiver of all claim to damages for its being leaky.

CONTRACT by Wilfred P. Taylor and Thomas C. Barker against Danville Cole and Albert F. Nichols, for breach of a contract to furnish the plaintiffs with a kettle fit for the manufacture of iron liquor. At the trial in the Superior Court, before *Pitman*, J., it appeared that the defendants, who were iron founders, undertook to make for the plaintiffs, who were manufacturers of chemicals, an iron kettle holding 1000 gallons, to be used in making iron liquors. There was no evidence that anything was said at the time the contract was made, in regard to the delivery of the kettle, and no evidence as to usage in relation to delivery.

The kettle was made by fastening the bottom to the sides by bolts and nuts, and there was evidence tending to show that the

work was carefully and properly done. After the sides and bottom had been fastened together, the kettle leaked a little, in a number of places, at the joint. While it was so leaking, Taylor saw it, said that the leaking would not matter much if it did not increase, but that he wanted Nichols to see it, left the yard of the defendants' machine shop while the kettle was leaking, and soon after requested the defendants to have the kettle delivered forthwith, without making any objection to its leaking or otherwise, except as above stated. Soon after Taylor left the yard the bolts and nuts were fastened tighter, and the kettle did not thereafter leak while it remained in the yard. On the next day the defendants delivered the kettle to the plaintiffs, leaving it just outside of their manufactory. The distance was considerable and the ground hard and frosty, and one of the defendants' witnesses testified that moving such a large body under such circumstances would tend to loosen the bolts. Upon the following day the defendants came at the request of the plaintiffs, to set up the kettle. When they arrived they found that the kettle was some distance within the plaintiffs' manufactory, and there was evidence tend-ᵢₙg to show that the plaintiffs' servants were then engaged in moving ᵢₜ with crowbars. The kettle was delivered and set up early in January 1869. Sometime early in the February following, the plaintiffs put iron liquor into the kettle and on the following morning, before any fire had been made under it, found that it was leaking badly at the joint. The defendants were notified of this leakage and requested to remedy it, and on February 19 endeavored to do so, but on subsequent use of the kettle it still leaked. On March 3 the plaintiffs gave their promissory note to the defendants, payable in four months, in full payment for the kettle and without making any objection to it. The defendants were soon after notified by the plaintiffs that the kettle still leaked, and the defendants made attempts to stop the leaking. The evidence was conflicting on the question whether the kettle leaked after this. The plaintiffs retained the kettle and never offered to return it, and the evidence was conflicting whether they ever requested the defendants to come and take it.

The defendants asked the judge to instruct the jury, " that if they found there was no agreement as to the delivery of the kettle, in the absence of evidence as to usage in delivering articles so ordered and made, then the kettle was to be delivered at the place of its manufacture, and if the same was free from defects and otherwise made in conformity with the contract, when and where it was finished and ready for delivery, the defendants were not liable in this action ; that if, after the kettle was finished, the plaintiffs saw and examined it, and had full opportunity to do so, and at the time of such examination the kettle leaked and the plaintiffs knew it, and they thereupon ordered the kettle to be delivered, without making any objection to the same or as to such leakage, this amounted to an acceptance of the kettle and the waiver of such defect ; and that if the plaintiffs knew, on or before February 19, 1869, that the kettle was defective and leaky, and on March 3, 1869, knowing that such defect still continued, gave their note to the defendants in full payment for the kettle, without making any objection as to the construction thereof or defects therein, this amounted to an acceptance of the kettle and waiver of all claim for damages for breach of the contract."

The judge refused to give these instructions, but did instruct the jury, upon the points embraced within said prayers, " that, the defendants having undertaken to deliver the kettle in point of fact at the manufactory of the plaintiffs, if the leak found to exist when the kettle was set up was caused by any defect in suitable workmanship or any carelessness in transportation, then the defendants were liable ; but that if the leak was caused by any carelessness of the plaintiffs in handling the kettle after it was delivered or in setting it up, then the defendants would not be liable ; that the burden of proof was on the plaintiffs to show the cause of the leak ; that as to the matter of waiver it was competent for the plaintiffs to waive any defects of which they had knowledge ; and that the matters stated in the defendants' prayers for rulings, so far as the jury should find them supported by the evidence, were matters for their consideration in determining whether there was a waiving of the defects now relied on ; but the judge declined to rule that such facts were, as matter of law, conclusive evidence of a waiver."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*J. W. Marshall,* for the defendants.

*F. T. Greenhalge,* for the plaintiffs.

BY THE COURT. The instructions given were well adapted to the facts of the case, and correctly and sufficiently covered all the points embraced in the defendants' prayers.

*Exceptions overruled.*

---

TIMOTHY SULLIVAN *vs.* PATRICK SWEENEY & trustees.

A. bought goods from B. and was indebted on account therefor; B. took a partner C. and the assets and credits of B.'s business were transferred to the firm. A. gave B. & C. an assignment of his future wages, which was duly recorded, and was absolute in form, but was intended as security. A. continued to buy goods from B. & C., and they drew money under the assignment sufficient to pay for what he had bought since the firm was formed, but not before. *Held,* that the assignment was good as against a trustee process.

CONTRACT for necessaries furnished to the plaintiff for himself and his family. The Hamilton Manufacturing Company were summoned as trustees of the defendant, and answered that they owed him $39.61. Philip Caldwell and one Smith, doing business under the name of Philip Caldwell & Company, appeared as claimants, relying upon an assignment to them from the defendant, absolute in form, of all claims and demands which at any time between August 31, 1871, the date of the assignment, and February 3, 1872, he might have against the Hamilton Manufacturing Company, for wages due him. The case was submitted to the judgment of the Superior Court upon the following agreed statement of facts:

" At the time of the service of the writ upon the trustees on November 2, 1871, there was due the defendant $39.61 for his personal labor and services in the employ of the trustees. An assignment of the defendant's wages to the claimants, duly recorded in the office of the city clerk of Lowell, dated August 31, 1871, is presented by the claimants. Philip Caldwell, of the firm of Philip Caldwell & Company, the claimants, previously to July