A. J. TOWER COMPANY *vs.* SOUTHERN PACIFIC COMPANY.

Suffolk. November 10, 1903. — January 5, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Carrier. Bill of Lading. Usage. Words,* "Inflammable goods."

Where in an action on a bill of lading for the loss of goods shipped by a vessel of the defendant, the defendant relies on the defence that the goods were inflammable and therefore within an exception which permitted such goods to be stowed on deck at the owner's risk, the burden of proof is on the defendant to establish this defence.

In an action on a bill of lading for the loss of oiled clothing shipped by a steamship of the defendant, it appeared that the goods were lost by reason of being stowed on deck and that a clause of the bill of lading provided that all inflammable goods might be transported on deck at the owner's risk. There was uncontradicted evidence of a general usage of steamship companies to stow oiled clothing on deck and to class it as inflammable goods, and also that the plaintiff was the largest manufacturer of oiled clothing in New England and had for many years shipped goods to be carried by the steamship companies maintaining this usage. The trial judge ordered a verdict for the defendant. *Held,* that the case should have been submitted to the jury, as it was a question of fact and not of law whether the usage was proved and formed a part of the contract.

CONTRACT for alleged breach of an agreement in a bill of lading to transport twenty cases of oiled clothing from New York to Galveston, Texas, by a steamship of the defendant. Writ dated December 7, 1900.

At the trial in the Superior Court before *Maynard*, J., it appeared, that the goods were shipped in a steamship of the defendant and were lost in a storm by reason of being carried on deck, having been thrown overboard when they became loose, and there was danger of their tearing the tarpaulin, which would have let water into the hold to the damage of the other cargo, and there also was danger of their interfering with the steering gear on the deck of the vessel. The only portion of the cargo lost was that stowed on the deck. The bill of lading contained the following provision : " Varnish, turpentine, camphene, burning fluids, acids, inflammable goods, or other dangerous articles shall be distinctly so marked as to indicate their character before shipment, and be transported if the carrier chooses, on deck or elsewhere, and they shall in all cases be at the shipper's or owner's risk."

The defendant contended that according to the usage and practice under which the goods were shipped, oiled clothing was classed as inflammable, and for that reason always was stowed on deck, and not in the hold; and that the oiled clothing in question was "inflammable goods" within the meaning of the clause in the bill of lading above quoted.

The character of the evidence sufficiently appears in the opinion. At the close of the evidence the defendant requested the judge to rule that upon all the evidence the plaintiff could not recover. The motion for this ruling was contested by the plaintiff on the ground that no custom was sufficiently proved as to oiled clothing in general, and no custom at all proved as to the oiled clothing manufactured by the plaintiff, that the effect of such proof as had been offered was for the jury, that, under the custom to mark bills of lading covering goods stored on deck so as to indicate that they were to be so stored, this particular bill of lading, which was not so marked, constituted a contract to carry the goods below deck, and that inasmuch as the loss would not have occurred if the goods had been carried below the deck, the defendant was liable for the loss occasioned by carry-

ing the goods on deck, and that the whole case as to the evidence of custom, and as to all the facts, was for the jury and should be submitted to them.

The judge gave the ruling requested by the defendant, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*R. F. Herrick*, for the plaintiff.

*W. D. Turner*, (*G. Hogg* with him,) for the defendant.

BRALEY, J. The goods named in the declaration having been delivered to and accepted by the defendant for transportation, it could not as a common carrier be relieved from the liability incurred by its undertaking to safely carry and deliver them unless the oiled clothing that constituted the consignment is within the exceptions provided for in the contract of affreightment.

It is conceded that no loss would have occurred from any danger of the seas, if the cases of oiled clothing had been stowed below deck; and the defendant now seeks to be relieved from the payment of damages caused to the plaintiff by their loss, on the ground that, being within the excepted articles classed as "inflammable goods," it had the right to transport them as it might choose on deck or elsewhere; even if by reason of their being stowed on deck they became loose while in transit during a severe storm, and were thrown overboard, not only to save other goods from damage, but to prevent their interfering with the necessary and proper navigation of the ship.

The burden of making out this defence is on the defendant. For this purpose it might show by competent evidence the composition and classification of the goods that were shipped and in so doing it would prove not only that they were within the class of merchandise that in the contract were at the shipper's or owner's risk, but that carrying them on deck would not be negligence on the part of the carrier.

After the captain of the ship had stated in his deposition to the admission of which in evidence *no objection was made* by the plaintiff, that the cases of oiled clothing were stowed on deck because of their inflammable nature, a foundation had been laid for the introduction of evidence to show a general usage; that because of its character it was customary among steamship companies to stow oiled clothing upon deck, " and that it was to be

classed as inflammable goods." *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416.

The existence of such a custom or usage and the extent to which it prevailed could be shown by witnesses who from long experience and observation knew what they and others did with such goods that were to be stowed on board, and then carried by vessels from port to port. All the deponents described what they did, and had seen done in like conditions. They testified to a fact. *Haskins* v. *Warren*, 115 Mass. 514, 535. *Hutchins* v. *Webster*, 165 Mass. 439, 441.

Whether the personal knowledge and experience of the several deponents was sufficient to qualify them to give such evidence was to be passed upon and determined by the judge presiding at the trial, and no good reason appears why his discretion was not exercised properly. An experience in loading and stowing cargoes of vessels extending in the case of one witness over a period of forty years and in that of another for at least twelve years was sufficient.

The form of some of the questions, to which objection was made, as to what were the reasons for such a usage did not call for the opinion of the witnesses as to whether or not it existed, but for a statement by them why oiled clothing was stowed in this way; and because of its uniformity and long continuance such a method of stowage was evidence that it had ripened into a custom.

Their testimony with that of other witnesses showed a general, uniform course of dealing as applied to the particular contract in issue, so far as it related to the shipping and transportation of goods properly classified as oiled clothing.

Where a custom is general as applied to a particular transaction the presumption is that both parties to the contract knew of it; and that it became incorporated in their contract and is binding on them.

And in an action on a contract in which one party introduces evidence of such general custom, and claims that it enters into and forms a part of the agreement, he is not obliged to prove actual knowledge of it by the other party.

There was ample evidence in this case not contradicted by the plaintiff, not only of such a usage and custom, but that the

plaintiff " was the largest manufacturer of such goods in New England, and had for many years shipped goods to be carried by these steamship companies."

For these reasons it became unnecessary for the defendant in order to bind the plaintiff to prove that it had actual knowledge of the custom relied on. *Stevens* v. *Reeves*, 9 Pick. 197, 201. *Packard* v. *Earle*, 113 Mass. 280, 283.

But such a presumption is one of fact for the jury, and not of law for the court. *Winsor* v. *Dillaway*, 4 Met. 221, 223. *Mooney* v. *Howard Ins. Co.* 138 Mass. 375.

The case should have been submitted to the jury to pass upon and determine this question, with instructions that the defendant must prove the alleged usage ; and that if upon all the evidence they were satisfied that such a usage or custom existed, then from its long continuance and the extent to which it had prevailed, they would be warranted in finding that it was known to the plaintiff, and formed a part of the agreement, and the defendant having brought itself within the exceptions of the bill of lading, the plaintiff could not recover.

*Exceptions sustained.*