FRANK D. MOFFAT & another *vs.* HUGH DAVITT & others.

Suffolk. November 13, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract*, Performance and breach. *Pleading, Civil*, Declaration. *Practice, Civil*, Exceptions. *Evidence*, Relevancy. *Damages*, In contract.

In an action for the alleged breach of a contract in writing to buy of the plaintiff five hundred tons of pig iron and to pay for it in cash in thirty days from the arrival of each car, an averment, that the defendant refused to receive the pig iron or any part thereof and to pay therefor as provided in the contract, is a good allegation of a breach of the contract.

In an action against the proprietor of a foundry for breach of an agreement to buy and pay for five hundred tons of pig iron, it appeared that about eight and a half months after the contract was made the former proprietor of the foundry, who originally had been joined as a defendant, sold the foundry and all the business connected with it to the later proprietor who owned it at the time of the trial. During the trial the plaintiff, by leave of court, discontinued his

action against the former proprietor and amended his declaration by alleging the transfer and declaring against the later proprietor alone. Before the amendment, the presiding judge, against the objection and exception of the defendant, had admitted *de bene* evidence of correspondence between the plaintiff and the former proprietor of the foundry before the time of the transfer, but, at the close of the evidence, the judge, at the defendant's request, excluded from the consideration of the jury all correspondence previous to the date of the transfer. *Held*, that, although, after the discontinuance of the action as against the former proprietor and the amendment of the declaration, the evidence became incompetent against the remaining defendant, yet, the jury having been instructed to disregard it, the exception taken at the time of its admission could not be insisted on, as the defendant failed to show that he had been prejudiced.

In an action against the proprietor of a foundry for the alleged breach of a contract in writing to buy of the plaintiff five hundred tons of pig iron and to pay for it in cash in thirty days from the arrival of each car, where the plaintiff contends that the defendant repudiated the contract, the plaintiff, for the purpose of showing such repudiation, may show that the defendant delayed the payment of debts in general pertaining to the business outside the plaintiff's contract and that the enterprise had turned out to be unprofitable and the defendant was contemplating an early sale of the plant, while constantly delaying, if not refusing, to receive any part of the five hundred tons of iron ordered from the plaintiff, the market price of which had diminished since the contract was made ; and from such evidence the jury can find that the defendant was trying to get out of a bad bargain and had decided not to perform his contract with the plaintiff, and, if the plaintiff has shown that he was ready and willing and offered to perform his part of the contract, they may return a verdict in his favor.

In an action against the proprietor of a foundry for the alleged breach of a contract in writing to buy of the plaintiff five hundred tons of pig iron and to pay for it in cash in thirty days from the arrival of each car, if the plaintiff shows that the defendant repudiated the contract and wholly refused to receive or pay for any of the iron, the measure of the plaintiff's damages is the difference between the contract price for the whole of the five hundred tons of iron and its market price, which can be shown by the price at which the iron was sold by the plaintiff to other persons in consequence of the defendant's repudiation of his contract.

CONTRACT against Hugh Davitt and Donald J. Davitt, formerly copartners doing business under the name of Hugh Davitt, and Mary F. Davitt, doing business under the name of the Davitt Iron Foundry, for alleged breach of a contract in writing in failing to accept and pay for certain pig iron. Writ dated November 19, 1903.

The declaration was amended during the trial by an amendment filed and allowed on June 14, 1906.

The amended declaration was as follows:

"And the plaintiffs say that on or about July 25, 1902, they made a contract with one Hugh Davitt, a copy of which is

annexed to their declaration and marked 'A' and made a part hereof; that at the time of the making of said contract said Hugh Davitt was the owner of a foundry at Springfield, Mass.; that subsequent thereto, to wit, on or about May 9, 1903, said Hugh Davitt sold and conveyed said foundry and the property and business therewith connected to the defendant, Mary F. Davitt; that in connection with the purchase of said business said defendant assumed all contracts connected therewith including said contract marked 'A'; that subsequent thereto and until the bringing of this suit said business has been carried on by the said Mary F. Davitt under the name and style of the Davitt Iron Foundry; that on or about July 9, 1903, at which time no delivery had been made under and by virtue of said contract marked 'A,' a modification in writing of said contract marked 'A,' was made between plaintiffs and defendant, a copy of which is annexed to said declaration marked 'B' and made a part hereof; that the defendant became obligated to the plaintiffs to keep and perform all the terms of said contract and the modification thereof; that the plaintiffs have kept and performed all the terms of said contract and said modification thereof upon their part to be performed and have ever been ready, able and willing and have repeatedly offered to complete, keep and perform all the terms of said contract and said modification thereof upon their part to be performed; that the said defendant has neglected and refused, though often requested, to keep and perform the terms of said contract and said modification thereof on her part to be performed and neglected and refused, though often requested, to receive the pig iron or any part thereof and pay therefor as provided in said contract and said modification thereof and still neglects and refuses so to do."

The copies "A" and "B" referred to in the amended declaration were as follows:

"A"

"No. 313.                    Springfield, Mass., July 23, 1902.

"Have this day bought of F. D. Moffat & Co., five hundred tons of pig iron at twenty-three & 75/100 dollars per ton of 2240 lbs.   Grade to be No. 2 X Saxton.

"Delivered at Furnace.

"Shipment to Springfield, Mass.

"100 tons each Mo., Jan., Feb., Mar., Apr., May.

"Strikes, unavoidable delays and accidents at the furnace excepted.

"Terms cash 30 days, from arrival.

"Hugh Davitt."

"B"

"Springfield, Mass., July 9, 1903.

"It is hereby understood and agreed to that the 500 ton contract we now have with Frank D. Moffat & Company for No. 2 X Saxton pig iron at 23.75 furnace that we pay cash in 30 days from arrival of each car with understanding the price is to be reduced to 21.75 f. o. b. furnace, same being a reduction of $2.00 per ton.

"The Davitt Iron Foundry,

"D. J. Davitt, Mgr."

"Accepted:

"Frank D. Moffat & Co.

"7-9-03.                           A. Fred Hammett, Mgr."

In the Superior Court the case was tried before *Stevens*, J. The plaintiffs were dealers in pig iron, with offices in New York and Boston, and had been selling pig iron to Hugh Davitt, who had an iron foundry in Springfield, Massachusetts, for some years previous to 1902. The defendant, Mary F. Davitt, purchased the iron foundry business from Hugh Davitt on May 9, 1903, and afterward conducted the business through her husband, Donald J. Davitt, as manager.

At the close of the plaintiffs' case, they discontinued the action against Hugh Davitt and Donald J. Davitt and amended their declaration, as stated above, making Mary F. Davitt the sole defendant. The defendant Mary F. Davitt demurred to the amended declaration. The judge overruled the demurrer, and the defendant filed an answer to the amended declaration containing a general denial. The defendant excepted to the overruling of her demurrer, alleging that it was overruled without giving her a hearing upon it.

Saxton pig iron was manufactured exclusively by the Saxton Furnace Company at Saxton, Pennsylvania. "2 X" Saxton pig iron indicates the grade or quality, and the kind indicated

contains a certain amount of silicon, — silicon being necessary in most castings and other iron foundry work.

The plaintiffs offered in evidence some correspondence between themselves and Hugh Davitt previous to May 9, 1903. The defendant Mary F. Davitt objected to the admission of all such evidence at the time it was offered, and the judge admitted it *de bene.* At the close of all the evidence the defendant asked the judge to strike out this evidence, whereupon the judge excluded all the correspondence previous to May 9, 1903.

At the close of the evidence, the defendant asked the judge to rule that upon the pleadings and the evidence the plaintiffs could not recover. The judge refused to make this ruling, and submitted the case to the jury. After having been out several hours, the jury returned for further instructions, whereupon the judge further instructed them as follows:

" I am asked, ' Can the jury consistently find damages for less than five hundred tons?' This case was tried upon the issue of whether or not the contract was repudiated. If it was repudiated by the defendant, then the plaintiff would be entitled to damages for five hundred tons. Of course if the contract was not repudiated, the plaintiff would not be entitled to any damages at all."

The jury returned a verdict for the plaintiff in the sum of $4,472.37; and the defendant alleged exceptions to certain admissions of evidence and refusals to exclude evidence, to the overruling of her demurrer without hearing the defendant, to · the refusal to rule that upon the pleadings and the evidence the plaintiffs could not recover, and to the foregoing supplemental instruction to the jury in response to the jury's request.

*C. Reno,* for the defendant Mary F. Davitt.

*H. L. Boutwell,* (*W. H. Hastings* with him,) for the plaintiffs.

BRALEY, J. The amended declaration having aptly set forth the contract and alleged as a breach the defendant's unqualified refusal to accept and pay for the pig iron, a case was stated which if proved would entitle the plaintiffs to recover damages. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. *Clark* v. *Gulesian,* 197 Mass. 492. *R. H. White Co.* v. *Remick,* 198 Mass. 41.

If evidence of the business dealings between the plaintiffs and the former owner of the foundry, who originally had been joined as a party, was competent until the amendment discontinuing the action as to him and the amended declaration had been allowed, it then became inadmissible against the defendant. But at the close of all the evidence, this testimony having been excluded on the defendant's motion and the jury fully instructed to disregard it, the exception previously taken to its admission is no longer open, as the defendant fails to show that she has been prejudiced.

The defendant became the owner of the foundry under an agreement to assume and pay the outstanding merchandise indebtedness of the vendor, which included bills due or to become due to the plaintiffs for iron already delivered or to be furnished in the future. The plaintiffs do not contend that evidence of the defendant's failure to pay this indebtedness according to the terms of the sale had any connection with the contract, for the breach of which the present action was brought, but they contend that it was admissible on the issue of repudiation. Upon this question much evidence, including numerous letters between the parties, was introduced. If repudiation of the contract by one of the contracting parties may be shown by proof of an unqualified refusal of performance directly made to the other party, it also may be shown by proof of such conduct on his part as to leave no other reasonable inference. After the defendant purchased and carried on the foundry, proof of her delay in meeting payments of debts connected with the business, as well as the letters of her manager, from which it could have been inferred that the enterprise had turned out to be unprofitable and that she was contemplating an early sale of the plant, while constantly delaying if not refusing to accept delivery of any part of the five hundred tons of iron, the market price of which had decreased, furnished evidence from which the jury would be warranted in finding that she finally had decided not to perform, and was seeking to get out of a bad bargain. *Earnshaw* v. *Whittemore*, 194 Mass. 187. The offer of performance tendered by her counsel in reply to the plaintiffs' demand for a settlement did not weaken the probative force of this testimony, for it easily could have been found to have been a possible

makeshift, intended only to postpone a lawsuit. There having been no dispute that the plaintiffs not only were ready and willing to perform but tendered performance, it consequently follows that the defendant's request for a ruling, that upon the pleadings and the evidence the plaintiffs could not recover, was refused rightly. *Morton* v. *Clark*, 184 Mass. 555, 557.

Nor is the exception to the supplemental instruction on the measure of damages well taken. If the contract was found to have been wholly repudiated, then, whether after it had been made there was a subsequent oral agreement for the delivery of the iron as it might be needed from time to time, or this was to be implied from the terms " that we pay cash in thirty days from arrival of each car" when read in the light of the attendant circumstances, as claimed by the defendant, or whether delivery was to be within a reasonable time under the construction claimed by the plaintiffs, became an immaterial question. Whichever construction was adopted, the contract was entire, even if payments were to be made by instalments, and, as no part of the purchase had ever been delivered, the measure of damages was correctly stated to be the difference between the market price of the entire amount at the time of repudiation and the price at which the iron had been sold. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474. *McLean* v. *Richardson*, 127 Mass. 339. *Parker* v. *Russell*, 133 Mass. 74, 75. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. *Earnshaw* v. *Whittemore*, 194 Mass. 187.

*Exceptions overruled.*