BENJAMIN C. FRIEDMAN *vs.* JUNIUS PIERCE.

Suffolk.   November 13, 1911. — January 2, 1912.

Present : RUGG, C. J., HAMMOND, SHELDON, & DeCOURCY, JJ.

*Evidence,* Extrinsic affecting writings, To show fraud, Presumptions and burden of proof. *Contract,* In writing, Performance and breach. *Fraud. Practice, Civil,* Ordering verdict. *Damages,* In contract.

Where one signs an unequivocal agreement in the form of a letter to pay for a stated number of volumes of an existing publication to be shipped by the person to whom the letter is addressed, and the letter contains the words, "This agreement is unconditional, except as noted hereon," and no conditions are noted thereon, the signer of the letter cannot show, at the trial of an action upon the agreement brought after he had received the books therein described and had returned them because he did "not feel as if" he could "afford the expense," that he was induced to sign the agreement by a representation of an agent of the vendor that, if he would sign, the books would be shipped to him with the privilege of examination and that he would be allowed to return them after examination if they were not satisfactory, such evidence tending to vary the terms of an unequivocal agreement in writing and not being sufficient to sustain a defense that the agreement was procured by fraud.

At the trial of an action upon an agreement in writing, dated on a May 12, whereby the defendant had agreed to receive and pay for certain volumes of a published work and the plaintiff had agreed to send him the volumes, it appeared that the following was printed on the face of the contract after the signatures, " 1 year's subscription Scientific American Free," that the volumes were sent to the defendant about May 25 and that he returned them at once with a letter stating that he could not afford the expense of purchasing them. The only evidence with regard to the " Scientific American" was testimony of the defendant, "that he received some copies of the Scientific American, — how many he could not say, — that he received copies until he wrote to the Scientific American Company" the letter of May 25. There was no evidence describing the " Scientific American." A verdict was ordered for the plaintiff. *Held,* that a verdict should not have been ordered for the plaintiff, it being incumbent upon the plaintiff to prove that he had complied with all the terms of his contract and there being evidence from which the jury might have found that the " Scientific American " was not sent to the defendant after May 25.

Where, at the trial of an action upon a written agreement by the defendant to receive and pay for certain volumes, a year's subscription to the " Scientific American " to be given to the defendant free, there is evidence from which the jury may find that, although the volumes were sent to the defendant, the " Scientific American " was sent to him only for two weeks, and that, upon his returning the volumes, the vendor kept them for nearly three months without notifying the defendant that acceptance of them was refused and that they were held subject to his order, and that the full contract price was not claimed from the defendant for eleven months after the volumes were delivered to him, a verdict should not be ordered for the plaintiff for the full contract price.

CONTRACT by the assignee of the vendor of sixteen volumes of " The Americana," sent to the defendant in accordance with the order given below.    Writ dated July 30, 1910.

In the Superior Court the case was tried before *Sanderson*, J. It appeared that the defendant signed for the plaintiff's assignor the following order, paying $7 to its representative at the time.

"May 12, 1909.

"Scientific American, Compiling Dept.,
          225 Fifth Avenue, New York.

"Gentlemen: Please ship to me, charges paid, one complete set of The Americana, in sixteen (16) volumes, bound in your Three-quarter Persian Morocco, for which, as value received, I agree to pay you, or your order, at the rate of $7 per volume, payable seven dollars monthly.

"(Signed) Junius Pierce.

Received $7 as cash payment.

F. L. Corrigan, Representative.

This agreement is unconditional, except as noted hereon.

| | |
|---|---|
| 1 year's subscription | Title to remain in |
| Scientific American Free. | you until all payments |
| | are made." |

The contract was assigned to the plaintiff for the purpose only of bringing this action.

There was evidence tending to show that the books were delivered to the defendant; that on May 25, 1909, he returned the books by express and wrote to the plaintiff's assignor: "I am very sorry that I cannot see my way clear to accept these books as they are a valuable acquisition, but at present I do not feel as if I can afford the expense.    I trust the seven dollars paid will cover the express, and if it does not kindly notify me and I will remit the difference."

The defendant testified " that he received some copies of the Scientific American, — how many he could not say, — that he received copies until he wrote to the Scientific American Company the letter " of May 25.

There was no evidence describing the " Scientific American."

The defendant offered in evidence an alleged conversation between himself and the agent who solicited from him the signing

of the foregoing order, and in connection therewith offered to prove the following facts :

" The agent of the plaintiff's assignor approached the defendant for the purpose of selling him a certain encyclopedia. The defendant said that he already had the Encyclopedia Britannica. The agent said that the encyclopedia which he offered for sale was different from the Encyclopedia Britannica, and would be of value to a man who owned the Encyclopedia Britannica. The agent had, at the time, only a cover and a few leaves of his book as a sample. The defendant stated that he would not subscribe for the book. ·The agent then said, ' If you will sign this contract, the books will be sent to you with the privilege of examination and you will be allowed to return them after examination if they are not satisfactory.' The defendant signed the order relying upon this statement, and would not have signed it but for this statement of the agent. When the books were delivered, he examined them and within twenty-four hours returned them. The plaintiff's assignor never notified the defendant that they refused to receive the books or that they held them subject to his order, except as that fact may be inferred from the three following letters to the defendant : The first letter was dated August 5, 1909, and read, " Referring again to contract we hold as signed by you, relating to the purchase of the ' Americana,' and which agreement you desire to have cancelled, we must request that you kindly give this matter further consideration, as we still adhere to the opinion that you should meet the obligation, and considering the small monthly payments required, we hold that you should be perfectly able to discharge the same. While we do not wish to be arbitrary, still we must protect our interests, and unless we can adjust the account with you direct we shall have to take other measures to secure our rights. We can assure you that we do not intend this as an ordinary threat, for we are confident that with some slight sacrifice you could meet the obligation and that the goods sold you are equal to representation and fully worth the value charged." The second letter was dated November 16, 1909, and read, " We wish to call your attention to your written contract with us in re ' Americana.' You obligated yourself under this contract to pay a certain amount for goods, as called for therein, and the books were duly delivered,

but subsequently returned by you with statement that you did not feel able to pay for same. This certainly does not warrant us in cancelling the agreement and we shall surely hold you responsible. It is not our desire to cause any one unnecessary trouble. We are held to our own agreements, and from a business standpoint there seems to be no substantial excuse for your failure to carry out your part and we will be obliged to.take this matter up in some other way if you are still unwilling to deal with us direct and persist in your refusal to adhere to the terms of the obligation." The third letter was dated April 25, 1910, and read, " We have carefully considered the reasons alleged as to your refusal to fulfil the contract you entered into with us. Acting under the advice of our attorney . . . we hereby advise that unless you arrange for a satisfactory settlement on or before the 10th of May, suit will be entered at once for the full amount as per original contract, and no further notice can be expected from this office. . . . We do not wish to start proceedings before giving you formal notice and an opportunity to settle with us direct. . . ."

The presiding judge ruled that the evidence offered tended to vary the written contract and was not admissible to prove fraud, and excluded it, subject to an exception by the defendant.

The defendant then asked the presiding judge to rule that upon the evidence and the facts above stated the plaintiff could recover, not the amount due under the contract, but damages for breach of the contract, to be assessed by the jury.' The presiding judge ruled that the plaintiff was entitled to recover the full amount due under the contract at the date of the writ, with interest from that day, and ordered the jury to find for the plaintiff accordingly; and the jury accordingly found for the plaintiff in the sum of $92.64. The defendant alleged exceptions, and counsel agreed that if either of the above rulings was erroneous, judgment was to be entered for the defendant.

*C. S. Tilden,* for the defendant.

*W. P. Murray,* for the plaintiff.

DeCourcy, J. The conversation between the book agent and the defendant, before the signing of the order, was rightly excluded. It was an attempt to vary the effect of a written contract which contained an express stipulation that it was un-

conditional; *Faucett* v. *Currier*, 109 Mass. 79; *Mears* v. *Smith*, 199 Mass. 319; and the excluded evidence was insufficient to sustain the defense of fraud. *Knowlton* v. *Keenan*, 146 Mass. 86. *American Soda Fountain Co.* v. *Spring Water Carbonating Co.* 207 Mass. 488.

But we are of opinion that the court should have submitted the case to the jury, instead of directing a verdict for the plaintiff for the full amount due under the contract at the date of the writ. On the issue of liability it was incumbent upon the plaintiff to prove that his assignor had complied with all the terms of its contract, which included an agreement to send to the defendant a copy of the Scientific American for one year. There was evidence from which the jury could find that the vendor did not send the paper after May 25, 1909, and that it thereby failed to perform the contract on its part.

The issue of damages also should have been submitted to the jury. The vendor's failure to forward the paper after the defendant had returned the books tended to support the defendant's claim that the return of the books had been accepted, and that the vendor thereby lost its right to recover the entire contract price. So far as the record shows it retained the books from May 25, 1909, to August 5, 1909, without notifying the defendant that the acceptance of the books was refused, or that they were held subject to his order. And the jury might have deemed it significant on this question that the letter of April 25, 1910, was the first to claim, in terms at least, the full contract price. *Barrie* v. *Quinby*, 206 Mass. 259. Without further considering the evidence it is apparent that the ruling was erroneous.

Under the agreement of counsel the entry must be

*Judgment for the defendant.*