## ROBERTSON v. RAMSAY et al.

(Court of Appeals of District of Columbia. Submitted April 14, 1924. Decided May 5, 1924.)

No. 4055.

Evidence ⬅️444(4)—Evidence that condition on which contract to sell realty was to become operative never occurred admissible.

Admission of evidence that condition on which a contract to sell realty was to become operative never occurred *held* proper, and not to vary terms thereof.

Appeal from the Supreme Court of the District of Columbia.

Suit for specific performance by Louise R. Robertson against Arthur T. Ramsay and others. From a decree dismissing the complaint, complainant appeals. Affirmed.

R. B. Fleharty, of Washington, D. C., for appellant.

William H. Sholes, Bates Warren, and Andrew B. Duvall, all of Washington, D. C., for appellees.

Before ROBB and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This appeal is from a decree, entered at the conclusion of the evidence, dismissing a bill for specific performance of an alleged contract for the sale of improved real estate in this District, located at Fourteenth and Fairmont streets, and known as "Fairmont Inn."

The testimony in behalf of the complainant, appellant here, was to the following effect:

The defendants Arthur T. Ramsay and Judith L. Steele were seized, as tenants in common, of the above-described property. The defendant Mabel H. Ramsay is the wife of Arthur T. Ramsay. Complainant, in August of 1922, was occupying the premises as a tenant, and, desiring to purchase the same, authorized her husband, H. W. Robertson, to conduct negotiations to that end. Accordingly Mr. Robertson submitted an offer to defendants' agent, N. L. Sansbury Company, Inc., but this was declined; the agent informing Mr. Robertson that defendants wanted all cash. On September 15th following Mr. Robertson and the Sansbury Company executed in duplicate the contract here sought to be enforced. This contract recites that the purchaser has deposited $1,000 as part payment of the purchase price of $110,000, terms of sale to be "cash at the date of conveyance, of which this deposit is part. * * *" After the usual provisions respecting title, rents, taxes, etc., the contract continues:

"Terms of sale to be complied with within forty-five days from the date of this agreement."

This contract was submitted to the owners, and a day later was returned to Mr. Smithy, a representative of the Sansbury Company, bearing the following indorsement:

"I hereby agree to and ratify the above contract of sale, with conditions on reverse side hereof.                                        Arthur Ramsay, Owner.

"Judith L. Steele, Owner."

On the reverse side of the contract was a printed stipulation providing for the payment of the regular commission to the Sansbury Company. This was signed by Mr. Ramsay, as owner, and the signature of Mrs. Ramsay appears under that of her husband. The duplicate originals of the contract were in the possession of Mr. Smithy and placed in his safe. At Mr. Robertson's request, a copy of the contract was furnished him.

On October 4th or 5th following Mr. Robertson, still representing the complainant, notified Mr. Smithy that Mrs. Robertson was ready to carry out the provisions of the contract, 'and was then informed that on October 2d the property had been sold to defendants Duvall and Ray for the same price. There was an incumbrance of $30,000 on the property involved.

The evidence for the defendants was substantially as follows: Mr. Smithy testified that, after the first offer was rejected, he informed Mr. Robertson that the only way the deal could be put through was to "get somebody to put up the money for it"; that—

"a few days later Mr. Robertson came back and said he had not been able to raise the money, but that he had been around to see Mr. Drury, of the Merchants' Trust Company, to whom he owed $20,000, and suggested to Mr. Drury that he put up $45,000, and take the trust for $65,000, and give him a chance; that Mr. Drury was interested in the proposition, and had said that, if Mr. Robertson could show him a bona fide proposition showing the details of the situation, 'I will obtain this property,' and Mr. Drury said he would take it up at the next meeting of the directors of the bank. Mr. Robertson said, 'Now, can you get me a proposition for a $110,000 sale,' and I told him I would try. So I told Mr. Robertson to put up his proposition of $110,000, subject to his procuring the money, and I would see what I could do with it. He did so, and we made up this paper (the contract), to which Mr. Robertson signed the name of Louise R. Robertson, and I then sent for Dr. Ramsay, and when he came in I went over this proposition with him, and told him that Mr. Robertson thought Mr. Drury would make him this loan of $65,000, provided he could purchase the property for $110,000; that there was to be a meeting of the directors of the Merchants' Trust Company on the following Thursday. This was along possibly Friday of the preceding week. Dr. Ramsay took the contracts away, said he would consult his co-owner, Miss Steele, and see me the next morning, which he did. He brought the proposition in, and he said, 'When do I understand this meeting is to be held?' I said, 'Next Thursday.' He said, 'All right; Miss Steele and I will take $110,000 for this property, provided it is cash, and I will give you these contracts to hold in your possession until Mr. Robertson has raised this money, which will be, you tell me, Thursday next.' I said, 'That is true;' and he said, 'I am not going to tie the property up indefinitely; I want a specific proposition on it.' I took the contracts."

When Mr. Robertson inquired as to Mr. Smithy's interview with Mr. Ramsay, Mr. Smithy, according to his testimony, said:

" 'All right. We can deliver the property, if Mr. Drury will put the money up.' He says, 'Well, I have got to have a copy of that contract.' "

In reply to a question as to whether anything was said to Mr. Robertson about the time limit, witness said:

"Oh, yes. The time was Thursday at the board meeting. * * * He understood that fully. He wanted a copy of this contract, to have it before Mr. Drury's committee on the following Thursday, at which time he was to know whether or not he would be able to purchase the property."

Witness further testified that Mr. Robertson asked for a copy of the contract, which was made for him; that this occurred possibly the 16th or 17th of September; that—

"Mr. Robertson knew that there were two signed copies in the safe, but he did not ask for delivery of either one, or suggest that I deliver one, or anything like it, and I did not tell him that I would keep it for safe-keeping for him."

Witness further testified that on Friday morning Mr. Robertson came to his office and informed him that, as there had not been a full meeting of the board, Mr. Drury was unable to give him a definite answer, and requested witness to get Mr. Ramsay to extend the time within which to raise the money,

"saying that the proposition was favorable to Mr. Drury, but I would have to give him a little more time. I called Dr. Ramsay on the telephone, and asked him if he would give him a little further time. Dr. Ramsay asked, 'How much time does he want?' I think it was the following Monday that Mr. Drury was to be back, and he was to give his answer on Monday, and I communicated that to Dr. Ramsay. Dr. Ramsay said, 'Well, all right. We will give him a further extension until Monday.' Mr. Robertson heard this. So I told Mr. Robertson to go ahead; that he had until Monday to pull the deal off."

On Monday morning Mr. Robertson informed witness that Mr. Drury had been away and requested further time. Witness told him he doubted his ability to get a further extension, but, upon being informed by Mr. Robertson that Mr. Drury certainly would let him know by Thursday of that week, witness promised to seek a further extension. Thereupon witness called up Mr. Ramsay, who promised to wait until Thursday, but stated that would be absolutely the last extension, adding:

"I am not going to tie the property up. Robertson either can or cannot buy it. If he can, let him buy it; if he cannot, let me know about it."

So witness—

"communicated to Mr. Robertson the statement of Dr. Ramsay, and Mr. Robertson came around Thursday afternoon and stated that he had got to pull the thing off, and asked me to go around to Mr. Drury with him and help him put the thing over. I walked around with him to see Mr. Drury, and Mr. Drury said, 'Mr. Robertson, the bank has turned down your proposition.' Mr. Drury said that he might be able to work it out with some of the directors. Robertson and I left, and I said, 'Robertson, your deal is all off:' and he said, 'Well, I think we can work it out with some of the directors; you can make Dr. Ramsay give me an extension on it;' and I said, 'No, he won't this time; he did not want to do the last one.' So he said, 'Well, you can call him up anyhow.' I said, 'All right, I will call him.' We called Dr. Ramsay when I got back to the office, and he was not there; so I called him that night, and he said, 'No, absolutely, I won't extend it again;' and I said, 'I do not believe myself there is much possibility of Mr. Robertson raising the money; however, it is up to you;' and he said, 'I decline to extend it further;' and I said, 'I will notify Mr. Robertson.' I called Mr. Robertson at his hotel, and told him the proposition was off; the deal was in the discard."

Objection was made to all this testimony upon the ground that it was an attempt to vary the terms of a written contract. There was other testimony to the same effect, but which need not be considered under the view we take of the case.

The court found that Mr. Robertson, when he signed the contract, was fully informed that it was not to be delivered unless and until Mr. Robertson, could satisfy Smithy that the money would be forthcoming; "in other words," to use the language of the trial justice, "that it was said at that time, 'You get the assurance that the money will be forthcoming and I will deliver you this paper.'" The evidence before the trial court fully justified this finding. It is apparent from the record that complainant was entirely without funds with which to purchase the property, so that it was necessary for her to rely wholly upon outside assistance. Her financial condition was known to the defendants, and, in the circumstances, it was natural that they should have insisted upon the arrangement about which they testified. It was not strange that they should have entertained a doubt as to the ability of the complainant to negotiate the deal, with no security other than the property to be purchased. What complainant really contemplated doing was to induce Mr. Drury to purchase the property for her and in her name, and afford her opportunity to repay him. As Mr. Drury was a responsible party, defendants were perfectly willing, upon receiving, tangible assurance that he would thus assist her, to defer the actual consummation of the deal for the 45 days specified in the tentative contract; but they were unwilling that the tentative contract should become effective and binding upon them until they received such assurance. Their conduct was consistent and straightforward throughout, and the failure of complainant to procure the necessary assurance within the time stipulated was due to the inherent weakness of her situation.

The introduction of the testimony to which objection was interposed, as already noted, in no way varied the terms of any contract, for the reason that no contract went into effect. As was said in Ware v. Allen, 128 U. S. 590, 595, 9 Sup. Ct. 174, 176 (32 L. Ed. 563) :

"We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it was not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or be ascertained thereafter."

To the same effect are Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; Donaldson v. Uhlfelder, 21 App. D. C. 489; Barrie v. Quinby, 206 Mass. 259, 92 N. E. 451.

The decree is affirmed, with costs.

Affirmed.