BENJAMIN McLEAN *vs.* THOMAS O. RICHARDSON & another.

Suffolk. March 31. — Sept. 2, 1879. COLT & AMES, JJ., absent.

The objection of a variance between the declaration and proof is not open on a bill of exceptions which sets forth the pleadings and evidence and the refusal of the judge presiding at the trial to rule that on the evidence the action could not be maintained.

A. offered to sell and B. to buy a lot of hides of a specified quality at a certain price, to be delivered in instalments at a railroad depot at the place where B. did business. B. received a part of the entire number, paid the freight on them, and then refused to accept them on the ground that they were not of the quality agreed upon, and directed A. not to send any more, and to inform him what disposition should be made of those received. A. subsequently, on account of B.'s refusal to accept the hides, received the first lot from him, repaid him the freight money, and resold the lot at a loss. In fact the hides were of the quality represented. *Held*, that the contract had not been rescinded by mutual consent; and that A. could maintain an action against B. for the difference between the contract price and the price received on the re-sale of the hides.

CONTRACT. The declaration alleged, that the defendants agreed to purchase of the plaintiff, at a certain price, two thousand hides, to be delivered at a railroad depot in Boston; that the plaintiff delivered the hides as agreed, and the defendants refused to accept them; and that the plaintiff was obliged to sell the hides at a reduced price, whereby a cause of action had accrued to the plaintiff. The answer contained a general denial, and averred that the plaintiff offered to sell to the defendants a lot of about two thousand hides, representing that they were of a certain quality; that the defendants accepted the offer; and agreed to buy a lot of about two thousand hides of the quality mentioned; that a portion of the hides were delivered to the defendants, and they paid the freight and cartage upon them, and afterwards found them not to be of the quality stated in the plaintiff's offer; that the defendants refused to accept them, and notified the plaintiff not to send any more; that afterwards two other lots were sent, and the defendants paid the freight and cartage, and then, finding that they were not of the quality agreed upon, refused to accept them, and notified the plaintiff of such refusal; that afterwards, at the plaintiff's request, they delivered the hides to an agent of the plaintiff, who repaid them the sums they had paid for freight and cartage; that by mutual consent the contract between the parties was rescinded; and that the defendants owed the plaintiff nothing.

Trial in the Superior Court, without a jury, before *Aldrich*, J., who allowed a bill of exceptions, which, after stating that the pleadings were a part thereof, proceeded in substance as follows:

On November 13, 1877, the plaintiff, who lived in Kansas City, Missouri, wrote the following letter to the defendants at Boston: " After assorting out those packers' Texas green salted cows, I find there are two thousand or over of sixty pounds down, that will go fifty to fifty-five pounds average." This letter also contained a representation as to the quality, which need not now be stated, and asked what price per pound the defendants would give for good and for damaged, delivered at a depot in Boston. On November 17, the defendants telegraphed to the plaintiff the price they offered, and the plaintiff the same day accepted the offer by telegraph. On November 19, the defendants telegraphed to the plaintiff to ship a few at once; and, on the same day,

wrote to him a letter containing the following: "We want some of the lot shipped at once. Please write us about how many you will get each week, and the total number to be expected." The plaintiff received the telegram of the 19th that day; and answered by telegraph as follows: "Will ship you car to-day, will ship another by Wednesday, and balance soon as possible." On November 19, the plaintiff wrote to the defendants a letter containing the following: "How many there will be cannot tell just now, but think I can let you know next week." On November 28, the plaintiff wrote to the defendants as follows: "Herewith find two cars of the packers' cows. On receipt, telegraph the net weight as written, and send expense bills páid railroad companies. There will be three thousand of these hides, and I would now fix the amount at that. There may be some more, and would send them to you under same agreement, if you wish. Let me know on receipt of this."

On November 21, 1877, the plaintiff sent to the defendants five hundred hides, on November 28, one thousand hides, and on December 6, five hundred hides. The lot first sent reached Boston and was received by the defendants in the afternoon of December 6. The defendants examined the hides the same afternoon, and at once telegraphed to the plaintiff, "Wait before shipping any more." The plaintiff received this telegram the same afternoon, but after the hides sent that day had gone forward. The same day, the defendants wrote to the plaintiff complaining of the condition of the hides, and stating that they would examine them further and report. On December 7, the plaintiff telegraphed to the defendants, in answer to their telegram of the 6th, that he would wait for a letter before sending more. On December 8, the defendants wrote to the plaintiff, stating that, on a careful and further examination, they could not accept the hides, and pointing out wherein they differed from the representations as to their condition described in the plaintiff's letter of November 13; and concluding as follows: "We shall try our best to sell them for you and get your price. We will make very moderate charges and commissions, and if we have any offers less than that we will at once telegraph you for your decision, before selling. We regret very much this result, but hope that we may so manage the sale as to meet with your ap-

proval. Shall we have them weighed now? We enclose freight bill for first car-load." On December 10, the plaintiff wrote to the defendants, acknowledging their letter of the 6th, and concluding as follows: "Have sent you two thousand in all so far. Will not ship any more at present. Their condition we call good. If your telegraphed weights, which I expect, are not to my satisfaction, I will ask N. W. Rice of your city to send over a man, to whom I will be willing to leave it." On December 18, the defendants declined to accept Rice as an arbitrator, and made an offer to take part of the hides under the contract and the rest on joint account. This offer the plaintiff did not accept, but on December 23 made another offer to the defendants, which they did not accept.

On January 7, 1878, the plaintiff sent a letter to the defendants as follows: "I have none of your favors, and as you refuse to accept the hides on your contract, or do anything that is satisfactory, will direct Messrs. N. W. Rice & Co. to take them and pay the freight, but will await your answer by telegraph to this. Have not yet said anything to Messrs. N. W. Rice & Co. about them. When I request, please deliver them to Messrs. N. W. Rice & Co." On January 11, the defendants telegraphed to the plaintiff as follows: "We are exerting ourselves to send you a good offer; shall not charge a commission. Wait few days." To this the plaintiff replied by telegraph on January 18, as follows: "I will not receive the bids, but will send order on you to N. W. Rice & Co. for payment. Will leave it all to them."

During this correspondence, the hides sent on November 28 and December 6 reached Boston, and were delivered at the store of the defendants, and by them received. On each lot, the defendants paid the freight and cartage, amounting in all to $815.27.

On February 4, the defendants sent to N. W. Rice & Co. the following letter: "Mr. Benjamin McLean wrote us on the 7th January that he would direct you to take from us certain hides which he sent us, but which we refused to accept, because they were not such hides as he had agreed to sell us, and that you would pay the freight on the same. They are now in our cellar, where they were placed pending correspondence with him as to what disposition should be made of them, and we are desirous to

be relieved from any further care of them. We have paid freight to the amount of $775.27, and cartage $40. Please let us know when it will be convenient for you to pay the freight and take the hides away." This letter Rice & Co. answered the same day as follows: "We have examined letter-press copy of letter from McLean to you, dated January 7 last, and we find you do not state the substance of the contents correctly. We infer from McLean's letter of that date, that if you refuse to accept the hides on your contract, or do anything satisfactory, then he will direct us to take them and pay freight, but will wait your answer by telegraph, to which you reply on the 11th of January, after receiving letter of January 7, as follows: 'We will exert ourselves to send you a good offer; shall not charge commission. Wait few days.' Now what we desire to say here is this: if you absolutely and unconditionally refuse to accept the hides now in your possession on contract between yourselves and McLean, then we will, on behalf of McLean, pay to you the freight and cartage, and take the hides; and upon no other conditions are we authorized to touch the hides, or pay any sum of money on their account. Please advise us at once whether you do so refuse to carry out your contract." On February 5, the defendants replied to Rice & Co. as follows: "We have already notified Mr. McLean that the hides were not such as he had agreed to sell us, and that we could not accept them in performance of his contract. Our refusal and reasons for it have been distinct, and it cannot be necessary to repeat them. He has instructed us to deliver them to you, and we accordingly stand ready to do so upon the payment of the bill for freight and cartage herewith presented."

The plaintiff did not send to the defendants any hides after the receipt of their telegram of December 6, 1877, and only two thousand hides in all were ever delivered to them.

After writing the letter of February 5, the defendants presented to Rice & Co. the bill for freight and cartage, amounting to $815.27, and Rice & Co., on February 8, paid this sum to the defendants, and thereafter removed all the hides from the defendants' cellar to their own; and afterwards sold the hides for the plaintiff, who seeks in this action to recover the difference between the price realized by the sale and the contract price.

The foregoing facts are all which are material to the question presented by the bill of exceptions. The other evidence related merely to the condition of the hides and the market price of such hides, and no question is made about it. The defendants contended that, upon these facts, the plaintiff could not maintain the action, and that the contract between the parties had been rescinded before the suit was brought; and asked the judge to rule as follows: " 1. On all the evidence, the plaintiff cannot maintain this action. 2. The contract between the parties was rescinded when the plaintiff received from the defendants the hides which had been delivered to them, and paid to them the freight and cartage." The judge refused so to rule, and rendered judgment for the plaintiff. The defendants alleged exceptions.

*M. Storey*, for the defendants, contended that there was a variance between the contract alleged and the proof, inasmuch as the contract alleged was a contract to buy two thousand hides, and the contract proved was to buy a specific lot containing three thousand hides; that the contract was rescinded by the mutual consent of the parties; and cited *Clark* v. *Baker*, 5 Met. 452; *Nichols* v. *Morse*, 100 Mass. 523; *Clement & Hawkes Manuf. Co.* v. *Meserole*, 107 Mass. 362; *Rodman* v. *Guilford*, 112 Mass. 405; *Mansfield* v. *Trigg*, 113 Mass. 350.

*E. P. Brown*, for the plaintiff.

SOULE, J. By the contract between the parties, the plaintiff was bound to deliver, and the defendants were bound to accept and pay for, at least two thousand hides. The plaintiff sent this number, of weights and quality which satisfied the terms of the contract, to the defendants. The defendants refused to accept them on the ground that they were inferior in quality to what the contract called for, and instructed the plaintiff not to send any more. This entitled the plaintiff to recover his damages for breach of the contract by the defendant, and excused him from further performance on his part, if he had not already fully performed the contract. At the trial, no objection was made to the admission of any of the evidence as incompetent, and no suggestion was made of variance between the declaration and the evidence, and the ruling that on these facts the action cannot be maintained was properly refused.

The refusal to accept the hides on the ground that they were not of the quality called for by the contract, was not warranted by the facts, and therefore the plaintiff had a right to sell the goods and recover the difference between the contract price and the proceeds of the sale. If he had suffered the hides to remain under the control of the defendants, he might have maintained an action for the price. *Nichols* v. *Morse,* 100 Mass. 523. But as the defendants refused to accept them, and he took them away in consequence of that refusal, the defendants cannot maintain the position that the title passed to them by delivery and that the only action against them must be for the price. The facts make the ordinary case of a tender of performance, and a refusal to accept. The proper and only remedy for the plaintiff is by action for the damages sustained, and these are measured by the difference between the contract price and the net proceeds of the subsequent sale.

The payment of the freight by the defendants does not change the relation of the parties to the goods. It was not a part payment of the price, though it would have been credited as such if the defendants had accepted and paid for the goods. It was an advance by the defendants to the plaintiff, for which they could have maintained an action if the plaintiff had failed to perform his part of the contract and had refused to repay the amount.

There is nothing in the correspondence which indicates any purpose of the plaintiff to waive his rights; and his agents took the utmost care to have the correspondence show that the plaintiff removed the hides only in consequence of the refusal of the defendants to accept them under the contract.

The rulings at the trial were correct.

*Exceptions overruled.*