WILLIAM B. BARRY & another *vs.* JOHN CAVANAGH & another.

Suffolk. March 13. — Sept. 5, 1879. MORTON & ENDICOTT, JJ., absent.

Under the Gen. Sts. *c.* 130, §§ 3, 7, a plaintiff's demand for unliquidated damages is not the subject of set-off.

In an action for breach of contract, for refusing to accept paving stones on delivery, it is error to rule that, if there was no market value of the stones at the place of delivery, a bridge in a city, the difference between the cost of delivering them there and the contract price would be the measure of damages, there being evidence of a market value of the stones in the city.

SOULE, J. The plaintiffs sue to recover unliquidated damages for breach by the defendants of their contract to accept a quantity of paving stones, which they had agreed to buy of the plaintiffs. The defendants answer to the merits, and file a declaration in set-off. But the plaintiffs' demand is not the subject of set-off. Gen. Sts. *c.* 130, §§ 3, 7. It is unnecessary, therefore, to consider whether the instructions to the jury as to the set-off were correct or not, because no right of the defendants was or could be prejudiced by them. *Montague* v. *Boston & Fairhaven Iron Works*, 97 Mass. 502.

The instructions to the jury on the measure of damages were not so accurate and clear as to be unobjectionable. The general rule was correctly stated. In ordinary cases the measure is the difference between the market value at the place of delivery and the contract price. But it was further ruled that, if there was no market value of the goods at Dover Street Bridge, Boston, (the place of delivery under the contract,) the difference between the cost of delivering them there and the contract price would be the measure of damages. This ruling was made with evidence in the case of a market value of the goods in Boston. Under these circumstances, we think it tended to mislead the jury. The plaintiffs, if entitled to recover, were entitled to such sum in damages as would put them in as good condition as if the defendants had fulfilled their contract. That is to say, they ought to have such sum of money as, added to the value of the goods where they lay, would put them into the same financial condition as if the defendants had accepted them and paid the

contract price for them. Now, if, when they were brought to Dover Street Bridge, where there was no market for them, it would cost all they would sell for at a market to carry them to the market, they were valueless there, and he would be entitled to recover the contract price, in order to be made whole. If they could be conveyed to a market for a part of what they would sell for, they were worth at the bridge the market price less the cost of getting them to the market, and the true rule would be the difference between what they were so worth and the contract price. Stated otherwise, if they were salable, where they lay, to be delivered elsewhere, at a price larger than the cost of delivery there, the excess of such price above the cost of delivery was the market value which should have been deducted from the contract price, in order to get at the damages. This excess, this market value, might be greater or less than the cost of delivering the goods from Quincy at Dover Street Bridge. The rule given may therefore have been too advantageous for the plaintiffs, and may have been too advantageous for the defendants. It certainly was not the correct rule. The phrase "market value at the place of delivery" was too narrowly limited, as meaning at the precise spot of delivery. The character of the goods, the purposes for which they were useful, the limited number of purchasers, are all matters to be considered, and the jury should have been so instructed as to the meaning of the phrase above quoted, in its application to the facts of the case, as to understand that it was not necessary, in order to the goods having a market value at the bridge, that there should be an established market price at that precise spot. *Selkirk* v. *Cobb*, 13 Gray, 313.

It is to be observed that the bill of exceptions does not present a case in which the plaintiffs, having been forbidden to furnish the remainder of the goods contracted for, after having furnished a part, refrained from procuring or manufacturing such remainder, and seek for damages for the loss of the opportunity to make and deliver the remainder, as in *Cort* v. *Ambergate &c. Railway*, 17 Q. B. 127. As we understand the exceptions, the plaintiffs actually caused the goods to be carried, a part of them to the bridge, and a part of them to the railroad station near by, and the defendants refused to accept them. As the instructions

gave the jury an erroneous measure of damages, and the de-fendants may have been injured thereby, there must be a new trial.                                   *Exceptions sustained.*

*W. E. L. Dillaway*, for the defendants.

*J. C. Coombs*, for the plaintiffs.