# Sharpsville Furnace Company, Appellant, *v.* Snyder.

*Contract—Sale—Breach by vendee—Measure of damages—Article to be manufactured.*

1. Where a specified number of tons of standard pig iron is sold to be delivered f. o. b. in installments of a specified number of tons per month, and it appears that the iron was not to be shipped to one and the same consignee, but to different parties as the vendee should direct, and it also appears that two-thirds of the tonnage delivered f. o. b. had been preceded by shipping directions given by the vendee to the vendor, the vendee cannot set up as a defense for a breach of the contract that the vendor had not delivered the remainder of the iron, if it appears that the vendor had repeatedly requested shipping directions, but had failed to receive them.

2. A contract for the sale of ordinary standard bessemer pig iron which is not as yet manufactured, and is to be delivered in installments, is an executory contract; and there is nothing in such a contract to take it out of the general rule that for a breach of contract for the sale of personal chattels, yet to be manufactured, the vendor is entitled to recover the difference between the selling price and the market value at the time and place of the delivery of the chattels.

Argued Nov. 4, 1908. Appeal, No. 237, Oct. T., 1908, by plaintiff, from order of C. P. No. 4, Allegheny Co., Third Term, 1908, No. 890, discharging rule for judgment for want of a sufficient affidavit of defense in case of Sharpsville Furnace Company v. W. P. Snyder, trading as W. P. Snyder & Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit for breach of contract.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*A. Leo Weil,* with him *C. M. Thorp* and *H. D. Montgomery,* for appellant.—The claim made by defendant for the first time in its affidavit of defense that it was under no obligations

to furnish shipping directions for the iron which under the contract was to be delivered to it f. o. b. Sharpsville, can hardly be seriously considered. After having recognized its obligation to furnish such shipping directions by its conduct under the contract, and after repeated promises to furnish such directions, as soon as it could find a market for the iron, and after reiterating that it did not repudiate the contract, and months after the time specified for the delivery, and after it had been notified by plaintiff that the iron was made and piled in the yards at Sharpsville at the disposal of defendant and subject to its order, it was only after this suit was brought that this defense was begotten. The court below was clearly right in holding that the affidavit of defense was insufficient; that the defendant was in default, and that the plaintiff was entitled to recover its damages. The court was in error as to the measure of damages. All of the courts generally, and this court particularly, have held that where the delivery is complete, that then the vendor is entitled to the contract price as the measure of damages: Puritan Coke Co. v. Clark, 204 Pa. 556; Ballentine v. Robinson, 46 Pa. 177; Keeler Co. v. Schott, 1 Pa. Superior Ct. 458.

*George E. Alter,* of *McKee, Mitchell & Alter,* for appellee.—It is well settled that a contract to sell and deliver goods at a certain place gives no cause of action unless there be a delivery at the place agreed upon: Norris v. Clark, 29 Pa. Superior Ct. 562.

Under the state of facts the plaintiff, with the iron remaining in its possession, asks for the price to which it would be entitled, under the contract, if the iron had been delivered to the defendant. This it cannot have: Newport, etc., Railroad Co. v. Seager, 7 Pa. Superior Ct. 270.

Opinion by Mr. Justice Mestrezat, January 4, 1909:

The learned judge of the court below was entirely right in discharging the rule for judgment for want of a sufficient affidavit of defense. The action was assumpsit for the contract price of pig iron. In April, 1907, the plaintiff sold 6,000 tons of standard Bessemer pig iron to the defendant to be delivered f. o. b. cars at Sharpsville, Pennsylvania. About 1,000 tons were

to be delivered during each of the last six months of that year. The shipments for July, August, September and October were received and paid for by the defendant company, but it declined to accept the balance of the 6,000 tons.

The court below held that the refusal of the defendant to receive the remainder of the iron was a breach of the contract for which it was responsible in damages to the plaintiff. The only defense set up in the affidavit was that plaintiff had not delivered the remainder of the pig iron on board the cars at Sharpsville according to the contract, and hence there could be no recovery in this action. This defense has no merit whatever, and, as the learned trial judge in his opinion properly observed, if there was nothing more in the case judgment should be entered against the defendant. The plaintiff time and again had requested shipping directions from the defendant with the view of placing the iron on the cars according to the contract, but the defendant company replied that it had no shipping directions to give, and asked for a cancellation of the contract. The iron was not to be shipped to one and the same consignee, but to different parties, just as the defendant should direct. Each of the several shipments aggregating the 4,000 tons which had been delivered on board the cars was preceded by shipping directions given the plaintiff by the defendant company. This was the course of dealing between the parties and was an interpretation of the contract which the court will enforce. It is the only reasonable construction to be placed upon the agreement. It would be idle, in fact absurd, to hold that the contract required the plaintiff to place the 2,000 tons of pig iron on board the cars at Sharpsville before the plaintiff could sustain an action for the breach of the contract for failure of the defendant to receive the iron. The defendant was not in a position to allege a breach of the contract by the plaintiff for failure to deliver the iron until it had given shipping directions as requested by the plaintiff. This is the reasonable interpretation of the contract, and the one placed upon it by the parties themselves.

Under the facts disclosed by the pleadings, the plaintiff has a remedy for the breach of the contract, and the measure of damages, as held by the trial judge, is the difference between the

contract or selling price of the pig iron and the market price or value at the time and place of delivery. In disposing of this branch of the case the learned trial judge said in his opinion: "The pig iron which is the subject of this contract was not in a deliverable state when the contract was made, as appears from the admissions above quoted. It had not yet been manufactured and was to be delivered in monthly installments. Therefore the title to the pig iron did not pass by the making of the contract, and the title thereto would not pass until there was an actual—not merely constructive—delivery. When title has not passed the vendor's action is to recover damages for nonacceptance; and these damages are to be measured by the loss which has been sustained and not by the full price stipulated in the contract. That is to say, the vendor can only recover the difference between the contract price and the market value at the time of the breach. This is the measure of damages which has been adopted in Pennsylvania, as we understand it, in the case of a breach of contract such as this one." This is the rule adopted in this state by an unbroken line of decisions. The statement discloses the fact that at the time of the contract the pig iron which was sold to the defendant was not in existence, but was to be manufactured by the plaintiff. This brings it within the rule that declares the contract to be executory and that the title does not pass until the manufacture is completed and the property is made ready for delivery. In Winslow, Lanier & Co. v. Leonard, 24 Pa. 14, involving the title to pig metal sold under a similar contract, LOWRIE, J., delivering the opinion, said (p. 16): "If it appear in the contract or ab extra that the vendor did not then own the article contracted for, or that it was not then in existence, or not yet manufactured, . . . . then the subject-matter of the contract remains undefined and unspecified, at least to some degree, and it is incompatible with the very nature of things to call it a perfect sale." The same case was again in this court, Leonard's Exrs. v. Winslow, 2 Grant, 139, and in the charge of the trial judge, adopted by this court "as containing a sound exposition of the law," it is said (p. 143): "If the metal sold to the plaintiffs . . . . was not manufactured, no title passed to the plaintiffs upon the delivery

of the bill of sale." The same doctrine was approved and enforced in Jones v. Jennings Bros. & Co., 168 Pa. 493, and Guillon v. Earnshaw, 169 Pa. 463. In this last case the late Mr. Justice DEAN delivering the opinion says (p. 471): "It will be noticed, from the contract, plaintiffs were to deliver the ore to the defendant, not on the wharf, but f. o. b. cars at Cartagena, from time to time, defendant to furnish vessels on advices of quantity ready for shipment. The breach of contract of defendant, was in the neglect to furnish the vessels to receive the ore; it was not his ore, and was not to be in his possession until loaded. It follows, then, it was at the risk and charge of plaintiffs, while at the wharf; as long as it was in their possession, their damages could not be the contract delivery price, unless the ore became absolutely valueless because of their failure to take it, and this last is not pretended. Then, the plaintiffs having been ready and willing to deliver at the appointed time in the contract, of which defendant had full notice, and the ore still belonging to plaintiffs, they were bound to get the market price at the time and place appointed for delivery. . . . The measure of damages was the actual loss, and they lost the difference between what defendant had contracted to pay for the ore, and the market price at Cartagena, when they discovered, definitely, he would not receive it. They had a right to sell it at Cartagena, not for any price, but for the market price, to German or any other buyers."

This was a contract for the sale of standard Bessemer pig iron. There is nothing special or peculiar about it which would bring it within the rule which permits the vendor who is the manufacturer to recover the price of the manufactured article after it is ready for delivery. It is not, therefore, within the class of cases which hold that the price may be recovered for a suit of clothes or a pair of shoes made to order, a portrait and the like, which have no value except to the person or for the purpose for which they are manufactured. Pig iron is bought and sold and kept in stock like other merchandise. It has a value to others as well as to the defendants in this case. There is, therefore, no reason for taking it out of the general rule recognized in this state that for a breach of contract for the sale of personal chattels, yet to

be manufactured, the vendor is entitled to recover the difference between the selling price and the market value at the time and place of the delivery of the chattel.

The judgment is affirmed.