# Spears *v.* Henry F. Michell Company, Incorporated, Appellant.

*Contract—Sale—Offer—Acceptance—Rescission—Damages.*

1. Where offers are made to sell two lots of grass seed, and the offers are accepted, and it appears that the minds of the parties met in the correspondence in regard to the subject-matter of the contract, the price, time and place of delivery and payment, and that the purchaser rescinded the contract on the mere ground that he had made a mistake, such repudiation of the contract gives to the seller the right to sell the seed in the open market within the time he would have been ready to ship it under the orders.

2. Grass seed is bought and sold and kept in stock like other merchandise at known seasons of the year, and there is no reason for taking it out of the general rule recognized in this state, that for a breach of contract for the sale of personal chattels, yet to be manufactured, the vendor is entitled to recover the difference between the selling price and the market value at the time and place of the delivery of the chattel.

Argued Dec. 11, 1913.   Appeal, No. 175, Oct. T., 1913, by defendant, from order of C. P. No. 5, Phila. Co., Sept. T., 1912, No. 2,581, entering judgment for amount wherein the affidavits of defense were held to be insufficient, in case of Woodford Spears and Catesby Spears Co., partners, trading as E. F. Spears & Sons, v.

Henry F. Michell Company, Inc.  Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Assumpsit for breach of contract.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order entering judgment for plaintiff for $840.

*Percival H. Granger,* with him *J. Howard Reber,* for appellant.—The acceptance must be unconditional and identical with the terms of the offer: Etting v. Shawnee Iron Co., 1 Leg. Gazette, 126; Henry v. Black, 213 Pa. 620; Smith v. Perry, 32 Pa. Superior Ct. 421; State v. Board of Public Service Col., 90 N. E. Repr. 389; Mead & Speer Co. v. Krimm, 43 Pa. Superior Ct. 376; Slaymaker v. Irwin, 4 Wharton, 369; Dougherty v. Briggs, 231 Pa. 68.

The plaintiffs' letters of May 13, and May 18, 1912, do not constitute acceptances of the defendant's orders, but merely acknowledgments of their receipt: Mayo v. Koller, 28 Pa. Superior Ct. 91; Lamb v. Prettyman, 33 Pa. Superior Ct. 190; Manier v. Appling, 112 Ala. 663.

*Ira J. Williams,* of *Simpson, Brown & Williams,* with him *Frank A. Chalmers,* for appellee.

OPINION BY ORLADY, J., February 20, 1914:

On May 4, 1912, the plaintiff wrote to the defendant, viz.: "The last few days we have sold several cars, new crop Kentucky Blue Grass, price $2.00 per bushel of 14 pounds, f. o. b. cars, here, for 19 pounds test, average quality of the season; August, September or October delivery.  If you are interested, wire us upon receipt of this letter, and we will try to confirm.  We

think the outlook is favorable for a good yield, but of course the crop could be largely ruined by weather conditions from now on." On May 10, the defendant company sent to the plaintiff on its purchase order sheet No. 31471, "For stock, description of material wanted, 50 sacks, 1912 crop, Kentucky Blue Grass seed, 19 pounds test for first quality, at $2.00 per bushel, f. o. b. Paris, Kentucky. This is as per your letter of May 4. Do not make shipment later than August 15, 1912." On May 13, 1912, the plaintiff wrote as follows: "We acknowledge receipt of your letter of 10th with order for 50 bags Kentucky Blue Grass as per our quotation May 4th, $2.00 per bushel of 14 pounds f. o. b. Paris, guaranteed to be pure Kentucky of the new crop, and test 19 pounds to the measured bushel. Are pleased to have your order." On May 16, 1912, the defendant sent another letter as follows: Purchase order sheet No. 32,162, "Quantity, description of material wanted. Deliver or ship next August, to our store, one hundred sacks 1912 crop Kentucky Blue Grass seed, 19 pounds first quality as per your letter of May 4th. Make shipment not later than August 15, 1912. This is in addition to our order No. 31471, of May 10th,—$2.00 per bushel, Paris, Kentucky. Please acknowledge this additional order." On May 18, 1912, the plaintiffs replied, "We are pleased to have your additional order for 100 bags 1912 crop Fancy Kentucky Blue Grass seed, testing 19 pounds to the measured bushel first quality at $2.00 per bushel, f. o. b. cars here, shipment first half of August. We thank you very much for the business and will do our best to see that you get nice quality." On May 25, 1912, the defendant wrote as follows: "Please cancel our orders No. 32162, May 16, for 100 sacks blue grass, and No. 31471, May 10, for 50 sacks blue grass. Mr. Richter placed these orders with you by mistake, not knowing that they had already been placed elsewhere by the writer, and the error was discovered only this morning in checking up

our purchase files. Please acknowledge receipt of this cancellation."—to which the plaintiffs replied: May 27, 1912, "We have your letter of the 25th, and have carefully noted contents. We cannot see our way clear to accept cancellation of this order. We accepted the order in good faith and have purchased the seed to fill it at from 30 to 35 cents per bushel higher than the present market. We would of course expect to fill the order if there had been an advance instead of decline." On August 3, 1912, the plaintiffs by letter, requested the defendants for shipping directions for the seed which the defendants refused to furnish. In the statement of claim the plaintiffs aver that at the time fixed by the contract for the delivery of the seed, its market price at the f. o. b. point, was $1.00 per bushel, and that they in fact sold more than the amount of the seed ordered by the defendant at the rate of $1.00 per bushel, and by reason of the breach of contract they sustained a loss of $1,200. A rule for judgment for want of a sufficient affidavit of defense was withdrawn and one entered for judgment for the amount to which the two affidavits of defense filed are insufficient, to wit: $840, with interest from August 15, 1912, for which the court below entered a judgment and made the rule absolute. The only question presented for review is the action of the court in making the rule absolute under the affidavits which are to be construed together, and as one. In the first affidavit it is urged that "if valid contracts were actually created between the parties prior to the cancellation of the orders" the only damage the plaintiff sustained is the difference between the market value of the seed and the contract price at the time of the cancellation, and this it is alleged was only thirty cents to thirty-five cents per bushel, or a total of $360 to $420. And in the supplemental affidavit it is averred that, "between August 1, and 15, 1912, the market price of the seed at Paris, Ky.," was "at least $1.30 per bushel," and on May 25, 1912, the date of receipt of

the cancellation, the price at that place was $1.75 per bushel, and the total damage would not be more than $300, even if valid contracts were subsisting between the parties.

On argument in this court it is urged that the letter of May 4, 1912, was not an offer, but simply "a quotation or invitation to treat." Whatever of uncertainty or ambiguity there might be in designating by a legal term this letter, it was made certain by the defendants' letter of May 10, and the plaintiffs' acknowledgment and acceptance of the very terms named by the defendants by their letter of May 13. The quantity, terms, time and place of delivery were specifically given by the one party and accepted by the other. Nor is there any suggestion of a misunderstanding of description in the use of the words "first" "average" or "nice" quality, each being a term to describe the "new crop grass, average quality of the season" of 1912, as stated in the first letter. The words used in the subsequent letters, necessarily referred to the same grass, and "first" and "nice" quality were mere laudatory terms of what had been clearly defined in the correspondence. This was recognized to be in binding force by the additional order of May 16, in which they describe the added 100 sacks as "first quality as per your letter of May 4th" and, is stated by the defendant to be "an additional order" which is accepted by the adoption of the very words, "first quality at $2.00 per bushel." There was no modification of the plaintiffs' offer in the acceptance of May 16, in which they say, "We thank you very much for your business." In such a case it is a safe and sound rule that the words of the writings shall be taken in their plain, ordinary and popular sense, and that they should not be strained to express a meaning they do not naturally convey. From this epistolary offer and acceptance there was nothing uncertain or conditional. The minds of the parties met in regard to the subject-matter of the contract, the price, time, and place of delivery and

payment.  With the transaction in this condition, the cancellation was made of "our orders" with the explanation that they had been placed by mistake, and the error afterwards discovered.  The appellants' repudiation of the contract, gave the appellees the right to sell the seed within the time they would have been ready to ship the same under the order, to wit, from August 1 to August 15, inclusive.

The statement avers that the seed was sold in the open market on August 19, the affidavit alleges that it was sold on August 7, but assuming this to be the fact, it does not better the case of appellants, as it is not suggested that there was a declared willingness or readiness on the defendants' part to receive the seed on that date, or that there was any change in the market value of the seed between the given dates.  The defendant stood by its cancellation, dated May 25, which makes Zuck v. McClure, 98 Pa. 541, relied on by appellants, quite unlike this case in its facts, and it does not control us.

Grass seed is bought and sold and kept in stock like other merchandise at known seasons of the year, and there is no reason for taking it out of the general rule recognized in this state, that for a breach of contract for the sale of personal chattels, yet to be manufactured, the vendor is entitled to recover the difference between the selling price and the market value at the time and place of the delivery of the chattel: Sharpsville Furnace Co. v. Snyder, 223 Pa. 372.

By the correspondence between these parties it is made clearly to appear that a definite point was reached where there was an unqualified proposal by one party and an unconditional acceptance by the other: 1 Sedgwick on Damages (9th ed.), 426; Dougherty v. Briggs, 231 Pa. 68; 2 Sedgwick on Damages (9th ed.), 1570–1586; 1 Milliston on Sales, 225.  And the affidavits of defense are insufficient to prevent judgment for at least the amount indicated in the motion.

The judgment is affirmed.