# Rees *v.* R. A. Bowers Co., Appellant.

*Contract—Sale of goods—Refusal to accept—Meaning of words —Intention—Rescission—Assent—Retaking possession—Delay.*

1. While the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts, the basis on which such imputation is founded must not admit of any other reasonable conclusion.

2. Where an inference may be drawn from words and acts consistent with an established right, such inference should prevail.

3. Where a buyer of goods refuses to accept them, and claims that the seller assented to the repudiation, he must show either a mutual agreement, or facts conclusive that an assent existed.

4. Retaking possession of the goods by the seller without comment, standing alone, is not sufficient to justify the court in declaring as a matter of law an assent to repudiation had been conclusively shown.

5. The mere retaking possession of the refused goods, even if the seller had to pay out money to secure the repossession, is compatible with good business practice to minimize loss in the protection of the perishable article.

6. Assent to cancellation of a contract is a question of intention, and whether it exists, is ordinarily for the jury.

7. Mere delay in enforcing a claim for goods sold does not affect the right of action.

8. After a seller has retaken goods which the buyer has wrongfully refused to accept, the seller is under no obligation to make further tender or attempt to deliver; he is not required to do a vain and useless thing.

*Contract—Sales—Breach—Refusal to accept by buyer—Remedies of seller—Damages—Measure—Market price—Place and time—Minimizing loss.*

9. Where a buyer wrongfully refuses to accept goods, the seller may stand on the contract and sue for the balance of the purchase money.

10. Or he may retake the goods, sell them for the best price obtainable, and sue for the damages resulting from the buyer's repudiation, but he must minimize the loss which might be sustained.

11. The measure of damages when the buyer repudiates the contract, is the difference between the contract price, and the market price at the time and place of delivery.

12. The seller, cannot, in an open market for a commodity largely demanded, by single private resales, determine market value, and so combine actual loss with market value to make out a case.

13. The price obtained on a private resale within a reasonable time after the breach of contract, may in certain cases be regarded as evidence of market value in the absence of other evidence as to an available market or market price; but then it must appear that the seller used reasonable efforts to obtain the best price and that it was fair.

14. Where a sales contract provides for a "market price at shipment dates" and at a place specified, the jury cannot fix the damages for breach from a sale made subsequent to the date of shipment, and based on prices in a market different from that contracted for.

Argued March 26, 1924. Appeal, No. 332, Jan. T., 1924, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1922, No. 5025, on verdict for plaintiff, in case of S. C. Rees v. R. A. Bowers Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for breach of contract in failing to accept and pay for eggs. Before McDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,516.04. Defendant appealed.

*Errors assigned* were, among others, (7) refusal of binding instructions for defendant, (8) dismissal of mo-

tion for judgment for defendant n. o. v., quoting the record, and (9) entering judgment on the verdict.

*Joseph J. Brown,* with him *Henry P. Brown,* for appellant.—Plaintiff should be held to have assented to the cancellation of the contract: Ong v. Campbell, 6 Watts 392; Terry v. Wenderoth, 147 Pa. 519.

Aside from the question of cancellation, plaintiff was required to tender performance as a condition precedent to any right of action.

Plaintiff did not properly prove his damages: Mindlin v. O'Boyle, 278 Pa. 212.

*V. D. Nicholson,* of *Taylor, Robey, Hoar & Nicholson,* for appellee.—The evidence, if any, of assent to a rescission was highly equivocal and was properly left to the jury to be considered with other evidence which strongly negatived such assent: Power v. North, 15 S. & R. 12; White v. Reynolds, 3 P. & W. 96; McCombs v. McKennan, 2 W. & S. 216; Richardson v. Moyer, 155 Pa. 174; McHenry v. Bulifant, 207 Pa. 15; Moody v. McTaggart, 29 Pa. Superior Ct. 465; Edson v. Magee, 43 Pa. Superior Ct. 297.

The delay of a year in bringing suit was no waiver of plaintiff's rights: Edson v. Magee, 43 Pa. Superior Ct. 297.

Plaintiff was under no obligation to make further tenders after the repeated refusals of the first shipment and the repudiation of the entire contract: Pittsburgh Steel Foundry v. Pittsburgh Steel Co., 223 Pa. 430; McHenry v. Bulifant, 207 Pa. 15; Seligman v. Beecher, 36 Pa. Superior Ct. 475; Baltimore Smelting Co. v. Ammonia Co., 2 Pa. Superior Ct. 555.

The measure of damages represented by the verdict was abundantly supported by the evidence and was in accord with the law: Theiss v. Weiss, 166 Pa. 9; Pittsburgh Sheet Mfg. Co. v. Steel Co., 201 Pa. 150; Morris v. Supplee, 208 Pa. 253; Delmont Gas Coal Co. v. Alkali

Co., 275 Pa. 535; Andrews v. Hoover, 8 Watts 239; Sloan Corp. v. Linton, 260 Pa. 569; Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90; Balto. Smelting Co. v. Ammonia Co., 2 Pa. Superior Ct. 555; Woldert Grocery Co. v. Wilkinson, 39 Pa. Superior Ct. 100.

OPINION BY MR. JUSTICE KEPHART, April 28, 1924:

Under date of March 9, 1921, R. A. Bowers Company purchased one car storage packed eggs per week to be shipped during the months of March, April, May and June from Kokomo, Indiana. The contents of the first car shipped was placed in storage, and subsequently inspected by the proper officer. The certificate of inspection showed the eggs did not correspond with the grade contracted for, whereupon the buyer notified the seller they were "not up to grading" and "it is with great regret that we must refuse this car and cancel the contract made with you. Will you kindly send us your check for the $1,600 we paid on this and notify the Phila. C. Stg. & W. H. Co. disposition of eggs?" Rees, the seller, on receipt of this letter, came to Philadelphia, and was informed by the purchaser's manager the eggs were not good enough. By subsequent inquiry it was learned the inspector's certificate on which the buyer relied had been based on a mistake, and other inspections showed the grade and quality contracted for. Notwithstanding Rees's efforts to have the shipment accepted, and performance of the contract completed, appellant's manager refused, and, as they were in storage in the buyer's name, appellee, the seller, to retake possession, was required to pay $1,600, being the advance payment on the car. The eggs were later sold by the vendor, as were the subsequent shipments that were to have been made to the buyer. On the action instituted to recover damages for repudiation of the contract, the vendor secured a verdict and judgment, from which this appeal was taken.

Defendant urges, the facts show the seller assented to the cancellation of the contract, and the court should have so declared as a matter of law. To sustain this position, the buyer must show either a mutual agreement, or facts conclusive in law that an assent existed: Power v. North, 15 S. & R. 12. After appellee's unsuccessful efforts in Philadelphia to induce defendant to take the shipment, he had one of two courses to follow: he might stand on his contract and sue for the balance of the purchase money, or he could retake the eggs, sell them for the best price obtainable, and sue for the damages resulting from the buyer's repudiation. He was required, however, to use reasonable diligence to minimize the loss which might be sustained.

Much reliance is placed on Rees's act in repaying the money and repossessing the eggs without comment. What was he to do? The buyer refused the car, demanded a return of his money, indicated he would not perform, and cancelled the contract. He could not do the latter alone, but his combined acts were a repudiation of the entire contract. The eggs shipped were of the quality and kind ordered as found by the jury. The buyer had no right to annul or repudiate the contract. In affirmance of it, appellee came from his home in Indiana to Philadelphia and insisted on compliance with its terms. Many acts were done in an effort to enforce it. Retaking possession of the property without comment, standing alone, would not be sufficient to cause the court to declare as a matter of law an assent to repudiation had been conclusively shown. Under these circumstances, appellant is in no position to question the retaking of the eggs by the seller, even if the latter was compelled to pay $1,600, which later found its way into appellant's hands. These acts are not equivalent to an assent. While the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts (13 C. J. 265; Ong v. Campbell, 6 Watts 392), the basis upon which such imputation is founded must

not admit of any other reasonable conclusion. And where an inference may be drawn therefrom consistent with an established right, such inference should prevail. The seller had a contract to which he had adjusted business arrangements. The buyer was urged to comply with its terms. The mere retaking possession of the refused shipment was compatible with good business practice to minimize loss in the protection of a perishable article. However, whatever weakness there may have been in these acts, so far as appellee is concerned, their evidential value for appellant was for the jury, and it found there was no "assent," and that the acts were consistent with the seller's rights.

Taking possession and exercising acts of ownership is not necessarily a rescission; nor is it conclusive on the question of an assent to cancellation: White v. Reynolds, 3 P. & W. 96; McCombs v. McKennan, 2 W. & S. 216; McLean v. Richardson, 127 Mass. 339. Assent to cancellation of a contract is a question of intention, and whether it exists is ordinarily for the jury: Richardson v. Moyer, 155 Pa. 174. Appellant's position is not aided by plaintiff's silence after his efforts to obtain performance. The repudiation of the contract stood in the way. It cut all lines between the parties, and the buyer was unlawfully the aggressor. Nor would the delay in bringing suit for a year, with the other evidence mentioned, be conclusive. Mere delay in enforcing a claim does not affect the right of action. All these matters were for the jury on the question of assent; they do not preclude the seller from asserting a claim for damages for repudiation. The principles announced in defendant's citation of authorities do not apply to the facts here presented. The seller was under no obligation to make further tender or attempt to deliver: Pittsburgh Steel Foundry v. Pittsburgh Steel Co., 223 Pa. 430, 439; McHenry v. Bulifant, 207 Pa. 15, 23; Thomas Canning Co. v. Johnson, 212 Mich. 243, 180 N. W. 391. He was not required to do a vain and useless thing.

A more serious question is presented when we consider the damages to which appellee was entitled. The contract provides the buyer should pay "one cent above New York top quotations on storage packed firsts, day of shipment; seller to pay freight......Seconds to be paid for at top quotations on seconds day of shipment...... During May......the storage packed eggs are to be ½c less, or, in other words, ½c over top quotations on storage packed firsts. During June......the storage packed eggs shall be 1c less than April, or, in other words, top quotations on storage packed firsts."

Plaintiff's statement, in paragraphs eight and nine, avers in substance that the damage is based upon the difference between the contract price and the market price at the date of shipment. Exhibit B, attached to the statement, has this heading, with figures thereunder, "market price at shipment dates." The eighth and ninth paragraphs make the same claim. While the statement correctly avers one of the measures to fix damages, there was no effort to prove it as of that or any other day. The evidence does show the eggs contracted for were shipped to Long & Brother of New York on consignment, and to Scheaffer & Marvel of Philadelphia. Whether the prices received were the market prices on day of shipment, sale, or any other date, is not in this record. The figures given represent merely the same at which Long & Brother sold the eggs, and that received from Scheaffer & Marvel, both at later dates than the days of shipment.

The contract specified delivery in Philadelphia; the time of delivery was the date of shipment. While there was a market in that city, there was no evidence to show the market prices there, or whether these were above or below New York market prices, where most of the eggs were sold. During this time there was in existence a list known as "Producers price current," giving the New York top quotations on the various shipment dates, as set forth in Exhibit B, and the latter also showed the sale

prices some time after shipment dates. There was proof that eggs sold without a prior contract were usually below top quotations, and sometimes below bottom quotations. The difficulty we find with all this evidence is that there is nothing to show market price on the day of shipment or the day of sale. While there is some evidence of an average spread as to top and bottom prices, Exhibit B, showing sale prices, fixes that spread at an average almost double that testified to. The case was susceptible of better proof, and, when objection was made it should have been offered. Here the eggs were resold without a prior contract, necessary because of defendant's repudiation, and from the testimony the price received was usually below bottom quotations. The jury fixed the damages from a sale made subsequent to the date of shipment, and based on prices in a market differing from that contracted for.

The measure of damages, when the buyer repudiates the contract, is the difference between the contract price and the market price at the time and place of delivery: Guillon v. Earnshaw, 169 Pa. 463; Woldert Grocery Co. v. Wilkinson, 39 Pa. Superior Ct. 100, 104; 35 Cyc. 592; Barry v. Cavanagh, 127 Mass. 394; Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90; Delmont Gas Coal Co. v. Diamond Alkali Co., 275 Pa. 535, 539; Kadish v. Young, 108 Ill. 170; Sharpsville Furnace Co. v. Snyder, 223 Pa. 372; Franklin Sugar Refining Co. v. Hanscom Bros., 273 Pa. 98; Spears v. Henry F. Mitchell Co., 56 Pa. Superior Ct. 294, 299. See sec. 64 of the Sales Act of May 19, 1915, P. L. 543, 561, and vol. 1, Uniform Laws Ann. 220. On this subject and the place of delivery as determining the market price, see Mr. Justice WALLING's opinion in Mindlin v. O'Boyle, 278 Pa. 212.

The substantial breach was defendant's letter. The contract price was to be fixed on the day the eggs were delivered to the carrier for shipment; this day also fixed the time when the market price was to be learned at the

place of delivery. Even if it could be said New York prices determined the proper measure, plaintiff still neglected to prove them as of the date of shipment.

A private resale by a factor in a large, open and available market, of a commodity so universally demanded, is not evidence of market value. The price obtained on resale within a reasonable time after the breach of the contract may in certain cases be regarded as such evidence, in the absence of other evidence as to an available market and market price. But then it must appear the seller used reasonable efforts to obtain the best price, and that it was fair. This court held, in Guillon v. Earnshaw, 169 Pa. 463, 471, where the place of shipment was the place of delivery and controlled the market price. "They had a right to sell it [the ore] at Cartagena *not for any price but for the market price.*" This is quoted with approval in Sharpsville Furnace Co. v. Snyder, supra, 376. In Seward v. Pa. Salt Mfg. Co., 266 Pa. 457, 461, it is said, sales not made in an open market where there is one, are not sufficient to establish market value.

In the present case there is no evidence the seller used due diligence, made a reasonable effort to obtain the best price, or that the price received was a fair one, aside from the fact that he was dealing in markets where the general selling price could be readily obtained. There is some statement made by the seller, "I tried to sell wherever I could at the best price I could get and if I could not do that I sent them on consignment to firms I have done business with a good many years." This is too general and largely a conclusion; it does not give details, place or parties. While the seller may recover only his actual loss when this is less than the statutory measure of damages (Theiss v. Weiss, 166 Pa. 9, 19), he must show the theoretical measure, that it may appear his actual loss was less than the theoretical measure. If we are to accept the uncertain average spread of prices advanced by appellee as the correct rule, and ap-

ply it to Exhibit B against those shipments where the sale price was less, we find the theoretical measure shows a much smaller sum due plaintiff. The seller cannot, in an open market for a commodity largely demanded, by single private resales, determine market value, and so combine actual loss with market value to make out a case.

Defendant objected to the evidence of damages when the question was first raised, insisting the claim be established as averred by the pleadings. We do not find it waived any right in this respect. There is no evidence on this record that will support the award made by the jury.

Assignments seven, eight and nine are therefore sustained, and the judgment of the court below is reversed, and a new venire granted.